WILLIAMSON v. EASTERN B. & L. ASSN.

1. ATTACHMENT—CHAMBERS—AFFIDAVIT—CAUSE OF ACTION—CIRCUIT
   JUDGE.—On a motion to dissolve an attachment, a Circuit Judge at
   chambers, on affidavits, must decide if plaintiff have a cause of
   action.
2. BUILDING AND LOAN ASSOCIATION—CONSTRUCTION OF CONTRACT—
   BY-LAWS—CIRCULARS—STOCK CERTIFICATE.—When the certificate of
   stock and the circular of a building and loan association provide that
   stock shall mature in a definite number of months, and the by-laws
   of the association state the contrary, the circular and certificate will
   prevail at instance of stockholder who contracted with reference to
   circular and certificate.

3. IBID.—BY-LAWS.—Is SHAREHOLDER in building and loan association bound by a by-law enacted after issuance of his stock, contradicting provisions of his certificate?

4. IBID.—ULTRA VIRES—REMEDIES—TORT—SHAREHOLDER.—If an agreement by a building and loan association is *ultra vires,* and the association entered into it knowing it could not perform its part, but induced the shareholder to part with his money by such representations, then the association is liable as for a tort.

5. ATTACHMENT.—A DEBT is the subject of attachment, although the evidences of it (note and mortgage) cannot be reduced to possession by the sheriff.

6. IBID.—FOREIGN CORPORATIONS.—The laws of this State imposing conditions upon which foreign corporations may do business within this State, do not repeal the attachment act as to such corporations.

7. IBID.—IBID.—CONSTITUTION.—Is the attachment act as applicable to foreign corporations violative of art. XIV., sec. 1, Con. of U. S.?

Before GARY, J., Darlington, April, 1898.    Reversed.

Motion to dissolve an attachment in case of Bright Williamson *v.* Eastern Building and Loan Association of Syracuse, N. Y.   The following is so much of the certificate as enters into the questions at issue:

This certifies that Bright Williamson, county of Darlington, and State of South Carolina, is hereby constituted a shareholder of the Eastern Building and Loan Association of Syracuse, N. Y.   Incorporated under the laws of the State of New York, and holds        shares therein, of $100 each; and in consideration of the membership fee, together with agreements and statements contained in the application for membership in the association, and full compliance with the terms and conditions and by-laws printed on the front and back of this certificate, which are hereby referred to and made a part of this contract, and the said Eastern Building and Loan Association of Syracuse, N. Y., agrees to pay said shareholder, or his heirs, executors, administrators or assigns, the sum of $100 for each of said shares at the end of seventy-eight months from the date hereof, or in case of his death prior to the expiration of seventy-eight months, the association will pay the sum of all monthly instalments paid

on this certificate, with interest at six per cent. per annum, payable in the manner and upon the conditions set forth in said terms, conditions, and by-laws hereto attached. All payments under this certificate are payable at home office of the association at Syracuse, N. Y., within sixty days after the acceptance and approval of satisfactory proofs. * * *

The decree of Circuit Judge is as follows:

This was a motion made before me at chambers, at Kingstree, on February 21, 1898, for the purpose of dissolving an attachment. The warrant of attachment was issued by the clerk of court in and for the county of Darlington, on January 12th, 1898, and it directed the sheriff of said county to attach all the property of the defendant that was in said county, and especially certain debts therein specified, which were claimed to be owing the defendant by certain residents of the said county. The only property attached was the said debts which were evidenced as follows: three of them by promissory notes, and two of them by bonds; while all of them were secured by mortgages on real estate. The motion was made on the grounds that the attachment was irregularly and improvidently issued, in that (1) the property of the defendant cannot be attached as that of a foreign corporation, as it appears from the complaint and affidavit that the defendant is located in this State, doing business therein and under its laws, and that the Court could acquire jurisdiction of the defendant by serving process on its resident agent therein named. (2) It is not true that the plaintiff has an existing cause of action, as the debt is not due and payable. (3) The debts attached are not the subject of attachment.

The first ground makes the point that the property of the defendant cannot be attached as that of a foreign corporation, because it was located and doing business within this State by virtue of having complied with the terms and conditions of the statute. The warrant of attachment was issued on the facts set forth in the affidavit and the complaint. The latter alleges that the defendant had complied

with the statute, and was doing business within the State, and that jurisdiction could be acquired of the defendant by the service of process on the resident agent therein named. Service was accepted by said agent on the 12th day of January, 1898. I do not think that the defendant stands on the same plane with residents of this State, and the corporation chartered by its laws. The statute regulating the terms and conditions on which a foreign corporation can locate and carry on business within this State, does not expressly or impliedly repeal the attachment act relative to attaching the property of a foreign corporation. As it was not expressly repealed, it could only be repealed by implication, and "repeals by implication are not favored." *Scurry* v. *Coleman,* 14 S. C., 169. Therefore, I refuse to dissolve the attachment on the first ground.

The second ground denies that the plaintiff has an existing cause of action. The right of the plaintiff to bring this action depends upon what is the contract, or rather what are the contracts, entered into by the parties. When the plaintiff became a member of the association in February, 1891, his status was that of an investor; and when he borrowed from the association in April, 1895, his status was changed to that of a borrower. At the commencement of this action, he occupied "dual positions, each separate and distinct: (1) that of a member of the corporation, and (2) that of borrower from the corporation." *Equitable Association* v. *Vance,* 49 S. C., 402; Endlich on B. & L. Associations, sec. 85. When the plaintiff became a member of the association, one of the by-laws was as follows: "The terms and conditions expressed in the certificate of stock in connection with the application for membership, and the by-laws of the association, formed the contract between this association and each shareholder therein." Art. 14, sec. 1. The plaintiff pledged himself in his application for membership as follows: "I hereby agree to abide by all the terms, conditions, and by-laws contained or referred to in the certificate of shares, and will also comply with all the rules and regula-

tions of said association." To ascertain what the contract was, the by-laws, terms, and conditions of the certificates, with the application for membership, and articles of incorporation, must be read together; but independently of express agreement, "the charter is also a contract between the stockholders and the corporation, which neither party may violate." 4 Am. & Eng. Enc. of Law, 2d edit., 1009. "The law imposes upon him as a duty springing from an implied but binding contract, obedience to the rules of the association." Endlich on B. & L., sec. 62. It is expressly provided in the articles of incorporation in existence at the time the plaintiff became a member, that "shares which are not pledged may be withdrawn before maturity." Charter of 1890, par. 12. When the plaintiff borrowed from the association in April, 1895, he was no longer an investor, but he entered into a separate and distinct contract with the association—that of a borrower. *Equitable B & L. Association* v. *Vance, supra;* Endlich on B. & L. Associations, sec. 121. At that time the rules of the association were as follows: "Instalment shares which are not pledged may be withdrawn before maturity, and payments shall be made in the order of the applications for withdrawals, but the association shall not be required to pay out on withdrawing and maturing stock more than one-half of the amount received from dues and stock payments in any one month." Charter of 1894, par. 10.

In law, the plaintiff's contract as a borrower contains among other elements the following: First: "The member agrees to receive the advancement from the building association, and to allow it for the privilege of the preference, a certain stipulated price, premium or bonus." Second. "He undertakes and gives as security in support of the undertaking faithfully to perform to the termination of the society's existence, or the running of a series all the requirement of the constitution and by-laws relative to stock payments, upon and in respect to the shares held by him (which, as a rule, he pledged to the society as collateral security), and to be liable

for and discharge all proper dues, assessments, contributions
and charges arising upon them in the same proportion and in
the same manner as the rest of the members; and in addition
to make a fixed periodical payment by way of interest on his
loan." Endlich on B. & L. A., sec. 124. The plaintiff
pledged his stock to the association as collateral security for
the loan, therefore, he cannot withdraw from the association,,
and consequently the amount borrowed has never been paid,
as he has no right to have his stock payment applied to its
cancellation. Endlich on B. & L. Association, sec. 124, 126,
127, and 129. In 1895, after the contract of loan had been
made, the articles of incorporation were changed, by making
a provision for the payment of withdrawals, "in the order of
the application for withdrawals." The plaintiff would have
no existing cause of action against the defendant, as there is
no money in the treasury to pay him with, even if his stock
was not pledged. The above amendment to the articles of
incorporation were reasonable, and intended for the protec-
tion of the association. The New York Court of Appeals,
in construing the statutes of the State, under which the
defendant was incorporated, held that a like association had
the right to make such a change, and it would be binding on
all members alike. *Englehardt* v. *Fifth Ward Permanent
Dime Savings and Loan Association,* 42 N. E. Rep., 710;
Endlich on B. & L. Associations, sec. 141 and 142. As the
plaintiff has no existing cause of action, the attachment can-
not hold.

The third ground makes the point that the debts are not
the subject of attachment. These debts are evidenced by
promissory notes and bonds, and being so evidenced, they
cannot be attached. *Burrill* v. *Letson,* 2 Spears, 378. This
case follows the custom of London, in drawing the distinc-
tion between debts that are so evidenced and those that are
not. The case of *McKelvey* v. *S. C. R. R. Co.,* held that a
debt due a mechanic for wages could be attached. That
case is authority under our Code, giving the right to attach
a debt, but the debt in that case was not evidenced by a bond

or note.    In construing the Code, the Court says: "It is in accordance, too, with the custom of London, by reference to which the attachment laws which have heretofore prevailed in this State have always been construed."

It is ordered and adjudged, that the attachment be, and the same is hereby, dissolved, with $5 cost to the defendant's attorneys; and that the plaintiff pay all other costs incident to this motion.

From this decree the plaintiff appeals.

*Messrs. Boyd & Brown,* for appellant, cite: *The defendant is a foreign corporation, and its property in this State is the subject of attachment:* Rev. Stat., chap. 45; 8 Wall., 181. *Attachment may be issued for other purposes than to give Court jurisdiction:* 30 S. C., 117; 37 S. C., 87; 1 Rich., 412; 48 S. C., 71; 14 S. C., 109; 39 S. C., 497. *Court must determine •from affidavits if plaintiff have a cause of action:* Code, 250; 1 McC., 331; 2 N. & McC., 130; 43 S. C., 346. *By-laws enacted after issuance of plaintiff's certificate cannot modify his contract:* 7 W. N. (Pa.), 95; 4 DeS., 585; 2 Strob., 463; 12 Rich. Eq., 136; 85 Pa. St., 394; 34 Leg. Int. (Pa.), 6; 29 S. C., 579. *The attached debts are the subject of attachment:* 2 Hill, 426; 3 Stat., 617; 2 Bay, 277; 2 Hill Eq., 39; 2 Bail., 244; 10 Rich. Eq., 291; 10 Rich., 534; 33 S. C., 353; 39 S. C., 497; 1 S. C., 167; 6 S. C., 447; 34 Am. St. R., 452; 5 Johns., 101; 89 N. Y., 529, 508; 36 Am. St. R., 171; 48 Id., 627.

*Mr. T. H. Spain,* contra, cites: *Foreign corporation complying with requirements of our laws for doing business in this State, is not liable to have its property attached:* 50 S. C., 200; 119 U. S., 342; 37 S. C., 87; 30 S. C., 119; 28 Fed. R., 440; 59 U. S., 451; 47 S. C., 387; 45 S. C., 87; 48 S. C., 65; 164 U. S., 565; 165 U. S., 667; 125 U. S., 650; 120 U. S., 579; Con. U. S., art. I., sec. 5; 14 S. C., 169. *Attachment may be dissolved because irregularly or improvidently*

*issued:* 28 S. C., 208.   *Charter is measure of corporate powers:* 42 N. E. R., 710; 92 Hun., 572.   *Plaintiff is investor and borrower:* 49 S. C., 402.   *If plaintiff's contention as to maturity of stock be true, the contract is ultra vires:* 48 N. E. R., 677; 92 Hun., 572; 62 U. S., 184; 131 U. S., 161; 139 U. S., 55.   *Officers of B. & L. Assn. cannot issue stock to mature at a fixed period:* 43 S. W. R., 280; 67 Ill., 550; 2 Ohio N. P., 181; 35 N. E. R., 979; 92 Hun., 572; 48 N. E., 677.   *This is New York contract:* 49 S. C., 402; 50 S. C., 308; 51 S. C., 428.   *And must be construed by laws of that State:* 4 Rich., 219; 2 Hill, 601; 1 Rich. Eq., 187; 10 Rich. Eq., 475; 3 Strob. Eq., 300; 4 Rich. Eq., 58; 51 S. C., 426.   *If plaintiff's stock had matured, he would have no cause of action, for under by-laws defendant had no funds to pay with:* 18 S. C., 469; 40 S. C., 481.   *Facts found by Circuit Judge cannot be reviewed:* 31 S. C., 444; 43 S. C., 329, 342.   *Debt evidenced by note or bond cannot be attached:* 6 S. C., 446; 2 Hill, 425; 2 Bail., 441; 31 S. C., 36; 42 S. C., 28; 1 S. C., 158.   *How debts are attached:* Code, 256, 257, 259.

April 18, 1899.   The opinion of the Court was delivered by

MR. JUSTICE GARY.   The appeal herein is from an order dissolving an attachment, which had been issued on the following affidavit: "Bright Williamson, the plaintiff above named, being duly sworn, says: 1. That the defendant above named, the Eastern Building and Loan Association, of Syracuse, N. Y., is a corporation duly organized and chartered under the laws of the State of New York, and that the said association is justly and truly indebted to the deponent in the sum of $1,562.50, with interest from the 29th December, 1897, as follows: on the —— day of February, 1891, deponent having made application for membership in the Eastern Building and Loan Association, of Syracuse, N. Y., subscribed for and received twenty-five shares, under a contract by which he was to pay $1 per share membership fee, and

thereafter seventy-five cents per share, or $18.50 monthly for seventy-eight months, and upon his so doing the said association was to pay him $100 for each share sixty days after acceptance of satisfactory proof of such payments. That afterwards, on the 19th of April, 1895, deponent in accordance with the by-laws borrowed from the association the sum of $937.50, with the understanding and agreement that he would pay as interest the sum of $6.25 each month until the expiration of the said seventy-eight months, when his said loan would be extinguished by deduction from $2,500, the value of the shares. That deponent paid said membership fees, the aforesaid monthly dues on his stock, and the said monthly interest on his loan until the full expiration of the said seventy-eight months, and then withdrew from said association, gave notice to the association, furnished the satisfactory proofs of his compliance with his part of said contract, and made demand for the sum of $1,562.50, the same being $2,500 less $937.50, the amount of his loan; but that though sixty days have since elapsed, the said association has failed and refused to pay deponent the said sum of $1,562.50. That deponent's said cause of action and its grounds will more fully appear by the sworn complaint in this action hereto annexed, all of the statements contained in which are true to the knowledge of deponent. II. That the said association is a foreign corporation. III. That deponent has commenced an action in this Court by issuing the summons hereto annexed against the said association upon the said cause of action." (Jurat.)

These allegations are substantially the same as those set forth in the complaint, except in the complaint it is alleged: "That by the said contract the time of maturity of the said shares was rendered definite, and the payment of the said $100 per share upon the said monthly payments being duly made, was fixed and contingent upon no circumstances. That this construction of the contract before plaintiff made said application for said shares and received the same, was represented to plaintiff by said defendant through its agent

and its literature, as its true and proper construction, and upon this representation, relying upon the same, and induced by the same, plaintiff signed the said application, received the said certificates, and made payments as required. That plaintiff paid the membership fees aforesaid, and for the full term of seventy-eight months, paid to the defendant each month the sum of $18.75." The plaintiff introduced in evidence a circular issued by the defendant which among other statements contained the following: "For the investor: This association issues three classes of certificates, designated as instalment, paid up, and fully paid up. All of which are guaranteed to mature in 6 1-2 years; amply secured by first mortgage on real estate; paid up stock doubles in 6 1-2 years; fully paid up certificates guaranteed quarterly dividends, seven per cent. per annum. For the borrower: This association has no auction sales, no bidding for loans, and a definite time for repaying a loan. The only association making a contract definite in every particular. Withdrawal value clearly stated, and never less than the amount paid in instalments; stock matures in 78 months. Borrowers know the exact amount required to cancel their mortgage." The sheriff served a copy of the warrant on each of the debtors with notice designating the debt garnished; and each of the garnishees furnished the sheriff with a certificate admitting the indebtedness claimed, and setting forth its particulars. The other facts necessary to understand the issues raised, are set out in the order of his Honor, the Circuit Judge, which will be reported.

The plaintiff appealed upon exceptions, the first of which is as follows: "I. The Circuit Judge erred, it is respectfully submitted, in adjudging that appellant had no existing cause of action when suit was commenced, and in dissolving the attachment on that ground, inasmuch as such judgment was, in effect, a trial and determination of action on its merits, at chambers, on motion, and upon affidavits; was founded on mistakes and error in the ascertainment and construction of the contract' between

appellant and respondent, as presented in the affidavit and exhibits before him on the motion; took no notice of a distinct waiver by respondent of the conditions which his Honor regarded as inhibiting action on the part of appellant; and was otherwise not sustained by the testimony before him, and the law applicable to the case." The first question raised by this exception is whether there was error in determining upon motion, at chambers, and upon affidavits, that the plaintiff had an existing cause of action. Section 250 of the Code provides that a warrant of attachment may be issued, whenever it shall appear by affidavit that a cause of action exists against the defendant, specifying the amount of the claim and the grounds thereof, and that the defendant is a foreign corporation. The rule is thus stated in 3 A. & E. Enc. of Pl. & Pr., 79: "The merits of the cause cannot be questioned under an application to dissolve the attachment. The defendant may, however, advance pertinent facts to explain how the transaction, out of which the suit originated, arose." In a note on that page it is said: "Thus an attachment, issued in an action to recover rent, has been held subject to discharge on motion, which shows that the rent is not due and unpaid, as alleged in the affidavit, notwithstanding a claim by the plaintiff, that such a decision is really upon the merits. *Clark* v. *Montfort,* 37 Kan., 756. 'For,' said the Court, in *Bundrem* v. *Denn,* 25 Kan., 430: 'while the Court cannot inquire into the validity or justice of the cause of action, yet it may inquire into the truthfulness of the grounds of attachment set forth in the affidavit, and, if this inquiry incidentally refers to some of the allegations of the petition, this does not compel the Court to refuse consideration of the motion, or suspend the decision until the final trial of the cause.' " It was necessary for the Circuit Judge to decide whether the plaintiff had a cause of action, and the appellant has failed to specify in what particulars his Honor violated the rule in determining this question. We may say, however, that we do not understand that the Circuit Judge undertook to decide any questions of fact involving the

merits of the case; but that he reached his conclusion solely from a construction of the contract and the statute as to attachments.

We will next consider whether there was error in determining that the plaintiff did not have a cause of action on the ground that his claim was not due and payable. If this question had to be decided solely upon the plaintiff's affidavit, it would undoubtedly appear therefrom that a cause of action exists in favor of the plaintiff against the defendant. The defendant, however, introduced in evidence the charter and by-laws, for the purpose of showing that the shares of stock are far below the value of $100, and, therefore, that the said shares have not matured. The agreement alleged in the plaintiff's affidavit and the by-laws present schemes for maturing the shares of stock that are radically different. The provisions of the said agreement and of the by-laws for maturing the shares of stock, are repugnant and in irreconcilable conflict. The question is thus presented for this Court to decide which shall prevail. In determining this question we will not consider any of the facts in the case that might estop either the plaintiff or the defendant from insisting upon the one or the other of said provisions, as this would involve the merits of the case, but will base our construction on what appears upon the face of the contract and the circular. It is a well known fact that comparatively few people who become shareholders in such associations are familiar with their by-laws. They rely upon the honesty, integrity, and fair dealing of those who manage the affairs of the association. It is also a well known fact that the by-laws are frequently intricate and almost unintelligible to the average shareholder, and that those in charge of the affairs of the association usually become exceedingly expert in the interpretation of them, thus giving the association a decided advantage in the way of information over the shareholders. Public policy, in order to prevent the perpetration of fraud, and to prevent just such a case as we now have before us, in which the

38—54

plaintiff alleges that he was induced by the express promises and the literature of the defendant to part with his money, in purchasing its shares of stock, demands that the defendant should not be allowed to elect whether it will be bound by its by-laws, or its express agreement, as to the time when the shares would mature. These views render unnecessary a consideration of the rule of interpretation discussed in the case of *Wis. M. & F. Ins. Co. Bank* v. *Wilkin,* 60 Am. St. Rep., 86, and in the extensive notes to that case, that when two clauses of a contract are in conflict, the first governs rather than the last. The circular will next receive consideration. The construction of a written instrument is a question of law to be decided by the Court. This Court has the right, therefore, to construe the circular. It unquestionably shows that the defendant interpreted the contract to mean that the shares would mature *at a fixed and definite period.* It is a well settled principle that when the construction to be given a contract is rendered doubtful by the language thereof, the interpretation of the contract by the parties themselves, is entitled to great weight. *Chicago* v. *Sheldon,* 9 Wall., 50; *Railroad Co.* v. *Trimble,* 10 Wall., 367; *Steinbach* v. *Stewart,* 11 Wall., 566; *Lowber* v. *Bangs,* 2 Wall., 728. Our conclusion as to the proper construction of the contract is in harmony with the interpretation placed upon it by the defendant, and this is an additional reason why the by-laws should not prevail against the express agreement fixing the time when the shares would mature.

The respondent also contends that even if the shares have matured, the appellant has not a cause of action, because there is no money in the treasury applicable to his claim. At the time the appellant became a shareholder, there was no by-law providing that shares should not be paid at maturity unless there was money in the treasury. The question whether the appellant waived his right to insist upon the original contract, by becoming a borrower, involves the merits, and will not be decided in this proceeding.

It is also argued that the agreement fixing a definite time for the maturity of the shares was *ultra vires.* In the case of *B. B. Ry. Co.* v. *McDonald,* 60 Am. St. Rep., 172, it is correctly said by the Court: "The general rule is that where a private corporation has entered into a contract not immoral in itself, and not forbidden by any statute, and it has been in good faith performed by the other party, the corporation will not be heard on a plea of *ultra vires.*" But even if the contract was *ultra vires,* what are the plaintiff's rights? In the case of *Washington Gas Light Co.* v. *Lansden,* 19 Sup. Ct. Rep., 300, the Court says: "The result of the authorities is, as we think, that in order to hold a corporation liable for the torts of any of its agents, the act in question must be performed in the course and within the scope of the agent's employment in the business of the principal. The corporation can be held responsible for acts which are not strictly within the corporate powers, but which were assumed to be performed for the corporation, and by the corporate agents who were competent to employ the corporate powers actually exercised. There need be no written authority under seal, nor vote of the corporation constituting the agency or authorizing the act." In 7 A. & E. Enc. (2d ed.), 837, it is said: "To exempt the corporation from liability in any case, three requisites must concur. The act must be (1) within the authority conferred; (2) without negligence; and (3) in good faith. If the corporation goes beyond or aside from the authority conferred upon it, it will be liable for resulting damage. And it will be equally liable if it fails to follow the mode and observe the essential formalities and restrictions as to time prescribed by the legislature, for the exercise of the powers conferred." In 27 A. & E. Enc., 393, the law is thus stated: "It was at one time supposed that private corporations aggregate, could not commit torts, and particularly those which involve the element of malicious intent; that as the sovereign in granting rights and powers for lawful purposes, had conferred no power to commit unlawful acts, such acts committed by the corporation's

agents must of necessity be *ultra vires* the corporation, and the individual wrongs of the agents themselves. It is true, that every tort committed by a corporation involves an unauthorized exercise of corporate power, but this is no reason why the corporation should not be held responsible for the consequences. However this may be, the doctrine stated above is entirely obsolete, and to-day corporations are held liable to the same extent and under the same circumstances for the consequences of their wrongful act as natural persons." · If the agreement was *ultra vires*, and the association entered into it knowing it could not perform its part thereof, and thereby induced the plaintiff to part with his money in the purchase of stock, then it was a tort, and the defendant would be liable therefor. Furthermore, even if the agreement was *ultra vires* and the defendant could interpose this plea, it would not be allowed to retain the benefits which it derived therefrom, and this would give the plaintiff a cause of action. *North Hudson B. & L. Ass'n* v. *Bank*, 11 L. R. A., 845. An interesting discussion of this subject will be found in the Central Law Journal of 24th March, 1899, in which numerous authorities are cited. The exception upon the question just considered is sustained.

. The second exception is as follows: "2. The Circuit Judge erred in adjudging that the debts attached were not the subject of attachment in this State, because evidenced by notes and bonds, and were not attached, and in dissolving the attachment on that ground; it being respectfully submitted that under the statute law of this State and the construction thereof by our Courts, such debts were and are subject to attachment, and that those in question in this action were duly attached." The Circuit Judge based his ruling upon the case of *Burrill* v. *Letson,* 2 Sp., 378. The law now of force is in some respects materially different from what it was when that case was decided. In *Tillinghast* v. *Boston Co.*, 39 S. C., 497, the Court says * * * "It must be remembered that an action cannot now as formerly be commenced by a writ of foreign attachment, but

that now, under the Code, an attachment is merely a provisional remedy in aid of an action, and hence to make it available, an action must be commenced in regular form" * * * See, also, *Stevenson* v. *Dunlap,* 33 S. C., 350, and *Campbell* v. *Ins. Co.,* 1 S. C., 158.   When the case of *Burrill* v. *Letson* was decided, the attachment act, 3 Stat., 617, authorized the attaching of monies, goods, chattels, debts, and books of account of an absent debtor, in the hands, power or possession of any one, while under the present statute, the sheriff is required to attach "all the property" of the defendant within the county.   Section 253 of the Code is as follows: "The sheriff or constable to whom such warrant is directed and delivered shall immediately attach all the real estate of such debtor, and all his personal estate, including money and bank notes, except such real and personal estate as is exempt from attachment, levy or sale by the Constitution, and shall take into his custody all books of account, vouchers and papers relating to the property, debts, credits and effects of such debtor, together with all evidences of his title to real estate." * * * There are other sections providing for the manner of attaching the different kinds of personal property, and showing that the intention was that all personal property should be subject to attachment, except such as is exempt by the Constitution.   Section 445 of the Code is as follows: "The words 'personal property' as used in this Code of Procedure include money, goods, chattels, things in action and evidences of debt."   It is not denied that if no bonds, notes or mortgages had been given, the debts evidenced by them would be subject to attachment.   The cases of *Nichols* v. *Briggs,* 18 S. C., 484; *Plyler* v. *Elliott,* 19 S. C., 257; and *Ballou* v. *Young,* 42 S. C., 170, show that the debt itself is something different from the note or mortgage, which are mere securities and evidences of the debt.   In the case of *Nichols* v. *Briggs, supra,* the Court says: "It must be kept in mind that there is a difference between the debt itself and the securities for it.   The debt is one, but there may be a number of securities of different kinds, personal, real, pledge,

mortgage, &c. The note given is only evidence of the debt and one of the means of collecting, and if there is a mortgage, that is only another security for the same debt." As' the debt is separate and distinct from the evidence of it, and as it undoubtedly is "personal property," it necessarily follows that it is the subject of attachment, although it may be evidenced by securities which the sheriff cannot reduce to possession. The case of *Campbell* v. *Ins. Co., supra,* supports this view. This exception is sustained. The third exception is too general for consideration.

The respondent gave notice that it would ask this Court, if necessary, to sustain the order of the Circuit Judge on the following ground: "That the property of the defendant cannot be attached as that of a foreign corporation, as it appears from the complaint and affidavit that the defendant is located in this State, doing business therein, and under its laws, and that the Court could acquire jurisdiction of the defendant by serving process on its resident agent therein named, and the Circuit Judge erred in not so holding." It is contended by the respondent that by *implication* the laws imposing conditions upon which foreign corporations are allowed to do business in this State, repealed the provisions of the Code which subjected the property of foreign corporations to attachment. The laws imposing these conditions will be found in chapter XLV. of the Rev. Stat., and in the acts of 1897 (22 Stat.), page 484. The provisions of the Code relative to attachments are set forth in chapter IV. of the Code. After the provisions of chapter XLV. of the Rev. Stat. were enacted, the legislature passed an act amending sections 248 and 250 of the Code, and in said act provided how said sections should read as amended. Acts of 1897 (22 Stat.), page 450. The retention of the provisions as to attachments against foreign corporations shows conclusively that the legislature did not intend to repeal them. This conclusion is sustained by the case of *Savage* v. *B. & L. Ass'n*, 31 S. E. R., 991.

Respondent in his argument contended that the attach-

ment act was in violation of article XIV., section I., of the Constitution of the United States, prohibiting a State from denying to any person the equal protection of the laws. The case of *Blake* v. *McClung*, 19 Sup. Ct. Rep., 165, shows that this would be a very interesting question if it had been passed upon by the Circuit Judge; but, as he made no ruling upon it, the question will not be considered by the Court.

It is the judgment of this Court, that the order of the Circuit Judge be reversed.