## HUNTER v. HUNTER.

1. WILLS.—No power conferred by will in question on executrix to sell real estate.

2. IBID.—TRUSTS.—A devise of "all the rest and residue of my estate, both real and personal, to my wife, * * * for and during her lifetime, to support herself and my children, and to educate my children," construed to give the wife a trust estate for life for benefit of the children, but no power to sell her life estate.

3. JUDGMENT.—Where there is no final judgment in a record, the Court cannot infer such judgment from presence in record of few prelim-

inary steps. Land here sold not under probate court proceedings, but by executrix.

4. WILLS—CAUSE OF ACTION.—REMAINDERMEN have cause of action against trustee for life, and purchasers to whom she has sold trust lands during life of trustee, to preserve their rights in the trust estate.

5. PLEADINGS.—SUBROGATION need not be specifically pleaded, where facts set up in the answer sustain such plea, and where testimony showing it was admitted without objection; but where such point has not been made below, case will be remanded, with leave to defendants to so amend their answer as to set it up.

6. SUBROGATION.—Where executor sells lands in excess of power conferred by will to pay debts of testator, the purchaser will be subrogated to rights of creditor, and can hold possession of land as security for so much of purchase money as was paid on such debts.

Before WATTS, J., Laurens, January, 1900.   Reversed.

Action for removal of trustee and accounting by Eugene S., Samuel M., Stokes, W. Mills, and Lea Hunter against Nannie W. Hunter, A. Y. Thomson, W. T. Blakeley, W. A. McClintock, W. J. Fleming, Robert H. Fleming, S. H. Fleming, Emma S. Fleming, and Mary J. Nabors. The following is the will in question:

"The State of South Carolina, Laurens County. I, Samuel M. Hunter, of the county and State aforesaid, do make and ordain this my last will and testament in manner and form as follows, to wit: 1st. I direct my executrix to pay my just debts and funeral expenses, and to erect a suitable monument over my grave, out of the proceeds of any of my personal property that she can best spare. 2d. I will all the rest and residue of my estate, both real and personal, to my wife, Nannie W. Hunter, for and during her lifetime to support herself and my children and to educate my children. 3d. I hereby authorize my wife to give to my children as they may severally go to housekeeping such of my property as she may deem proper for them to have and such as she may think she can spare, and to keep an account of it so as to make all my children equal in the final division of my estate at the death of my said wife. 4th. At the death of my wife,

I will that all my property then left after supporting and educating the family and children shall be equally divided among my children living at the death of my wife. If any of my children should die in the lifetime of my wife leaving a child or children living at her death, such child or children shall take the share of the deceased parent in my estate. At the death of my wife, I direct that all of my estate, both real and personal, that may be left after supporting the family and educating my children, shall be divided among my children living at my wife's death and the children of any of my children that may die in the lifetime of my wife, by four disinterested and competent men, to be selected by my children—without the aid or interference of any Court—the children of a deceased child to take the parent's share. 5th. I appoint my wife, Nannie W. Hunter, executrix of this my will during her lifetime; at her death, I appoint my sons, Eugene, Samuel, Stokes, and William Mills, executors of this my last will, also my son, Melmoth Leander. S. M. Hunter. [L. s.] Signed, sealed and acknowledged in our presence, this 28th day of August, A. D. 1875, as witnesses. J. P. Miller, John W. Stokes, W. L. Wait."

Plaintiffs appeal from Circuit decree.

*Messrs. Haynsworth, Parker & Patterson,* and *Ball, Simpkins & Ball,* for appellants, cite: *Rights of children will be protected by equity:* 10 Rich. Eq., 294. *Terms in will create a trust:* 7 Exch., 344; Riley's Ch., 906; 9 Rich. Eq., 212; 12 Rich., 536; 37 A. R., 102; 10 N. E., 296; 104 U. S., 291; 38 Am. St. R., 157; 125 Pa. St., 522. *One plaintiff not estopped from maintaining this action because during infancy he was called to witness a deed of executrix:* 3 Rich., 189; 2 Rich., 151; 2 S. C., 68. *Plaintiff not precluded by probate proceedings, because formalities for making infants parties have not been complied with.* 17 S. C., 439; 23 S. C., 189. *Court cannot infer final judgment from part of record:* 12 S. C., 145.

*Messrs. N. B. Dial* and *W. H. Martin,* contra, for all defendants, except Mrs. Nannie W. Hunter, cite: *Proceeds of sale of lands having been used for payment of testator's debts, the purchasers are subrogated to rights of creditors:* 18 S. C., 132; 41 S. C., 337. *Words in will relied on to create trust estate are precatory, and do not affect her life estate:* 17 S. C., 45; 5 S. C., 450.

Aug 2, 1900. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. On the 25th day of April, 1883, S. M. Hunter, having first duly made and executed his last will and testatement, departed this life, leaving surviving him his wife, the defendant, Nannie W. Hunter, and his children, who are the plaintiffs in this case. The said Nannie W. Hunter was the duly appointed and qualified executrix of the will of her husband; and as such she made deeds to S. M. Nabors, A. Y. Thompson and E. J. Fleming, purporting to convey to these persons in the different proportions mentioned in the complaint, a tract of land lying in the county of Laurens, which deeds bear date respectively as follows: that to S. M. Nabors on the 9th of May, 1885; that to A. Y. Thompson on the 8th of August, 1885; and that to E. J. Fleming on the 18th of November, 1885. It seems that some proceeding was instituted in the court of probate for Greenville County, exactly when does not appear, though from such portions of the record of that proceeding as were introduced in evidence, it was probably early in January, 1885, the object of which seemed to be to obtain an order for the sale of the real estate of the testator in aid of the personalty to pay his debts, and also for the purpose of injoining creditors from suing the executrix at law, and requiring them to prove their claims under that proceeding, for there is an order to that effect, but there is no order for the sale of the real estate, and there is no evidence that any order of sale was ever granted. The present action was brought by the plaintiffs, comprising all of the children of the testator, against the said Nannie W. Hunter, and the

25—58

other defendants, who claim title to the land in question under the sales made by the said Nannie W. Hunter, as aforesaid, in which the plaintiffs claim that the said Nannie W. Hunter had no authority, either as executrix or otherwise, to sell any of the real estate of the testator; that the life estate given to her by the will, was given to her in trust for the support of herself and the children of testator, and also for the education of said children; that the said Nannie W. Hunter has never·performed the trust imposed upon her, but, on the contrary, has deprived herself of the means of doing so by selling the land as aforesaid, which constituted the principal part of the testator's estate; wherefore, the plaintiffs demand judgment "that said Nannie W .Hunter may be removed as trustee of the said life estate, and that the said will be construed by this Court, and that it be declared that the said life estate is subject to the support of these plaintiffs, and that the rents and profits thereof be apportioned between the said Nannie W. Hunter, or her grantees, and these plaintiffs, and that the said Nannie W. Hunter and her grantees do account to these plaintiffs for all rents and profits heretofore derived from said land; and that it be declared that, after the termination of said life estate, these plaintiffs are the owners in fee simple of the said lands, and for the costs of this action." To this complaint the defendant, Nannie W. Hunter, filed no answer, but the other defendants, who are in possession of the land claiming under the sales above mentioned, answered, setting up, amongst other things, the claim that Nannie W. Hunter had authority, as executrix, to sell the land; or that, at least, she took a life estate therein, unencumbered with any trust, which estate she had a right to sell and has sold. And as a further defense, they claim the said Nannie W. Hunter had authority to sell the land under the proceedings in the court of probate above mentioned; that the lands were purchased at their full value, and that the proceeds of the sale were applied to the payment of the debts of the testator, and to the support and education of his children, the plaintiffs herein. They

also claim that said sales were made with the knowledge, consent and approval of the plaintiffs. Finally, they plead the statute of limitations—the action, it appears, not having been commenced until 30th of June, 1899. Upon the pleadings thus briefly stated, the case came on trial before his Honor, Judge R. C. Watts, when the testimony set out in the "Case" was introduced. The only portion of the testimony which, under the view we take of the case, we deem it necessary to state, is that portion of Mrs. Nannie W. Hunter's testimony in which she states that the entire proceeds of the sale of the land were applied by her to the payment of the debts of the testator; and this testimony does not anywhere appear to have been denied. The Circuit Judge, taking the view that Nannie W. Hunter, under the will, took a life estate unencumbered with any trust, she had a right to sell that estate; and hence, without considering any of the other questions in the case, held that the action was prematurely commenced, and, therefore, rendered judgment dismissing the complaint, with costs. From this judgment plaintiffs appeal upon the several exceptions set out in the record; and, in accordance with the proper practice, respondents have given notice that if this Court finds itself unable to sustain the judgment of the Circuit Judge upon the ground upon which he rested it, they would ask this Court to sustain such judgment upon the grounds set out in the record.

We do not deem it necessary to set out these exceptions and these additional grounds in *haec verba,* but think it will be sufficient to state the questions which these exceptions and grounds raise. 1st. Is there anything in the will which justifies the inference that the testator intended to invest his executrix with the power to sell his real estate? 2d. Was the life estate given to the wife unencumbered with any trust in favor of the children; and, if so, is there anything in the will which justifies the inference that the testator intended to invest his wife with the power to sell such life estate? 3d. Did the executrix derive any power to sell the land in question from the proceedings in the court of probate

of Greenville County? 4th. If the sale was made without authority, does the fact that the proceeds of such sale were applied to the payment of the debts of the testator entitle the defendants to be subrogated to the rights of the creditors whose claims were satisfied by their money; and have they the right to retain possession of the property so purchased until they have been repaid the amount so paid by them?

The first of these questions depends upon the construction of the will as a whole, and for this reason a copy of the same should be incorporated by the reporter in his report of the case. It is quite certain that the will contains no *express* authority to the executrix to sell any portion of his estate, though the terms of the first clause might be sufficient to warrant the inference that the testator intended to invest his executrix with the authority to sell his *personal* property, if the same became necessary to effect the purposes therein indicated; but there is not a word in the will, so far as we can discover, which indicates an intention on the part of the testator to invest his executrix with power to sell his *real* estate. Indeed, this question was not seriously discussed at the hearing, and may be dismissed without further remark.

2d. This question is more important, and is, in fact, one of the turning points in the case; and as we differ with the Circuit Judge in the view which he has taken as to this point, we have examined this question with great care. The question naturally divides itself into two branches: (a) Was the life estate given to the wife encumbered with any trust? (b) If so, was there any power conferred upon the executrix to sell such life estate thus held by her in trust? As to the first branch of the inquiry, it seems to us that the case of *Wylie* v. *White,* 10 Rich. Eq., 294, cited by counsel for appellants, is conclusive. The testator, after providing, in the first clause of his will, for the payment of his debts and funeral expenses, and for the erection of a monument over his grave, "out of the proceeds of any of my personal property that she (the executrix) can best spare,"

proceeds, in the second clause of his will, as follows: "I will all the rest and residue of my estate, both real and personal, to my wife, Nannie W. Hunter, for and during her lifetime, to support herself and my children and to educate my children." It will thus be seen that the testator not only expressly declared the quantity of estate which he gave to his wife, but also the purpose for which it was given to her. It was not given to her in such terms as would import that he intended his wife to take the bounty provided for her, as her own absolutely, to dispose of as she should think fit; but, on the contrary, the purposes for which it was given were distinctly declared. There are no words used in this, or in any other clause of the will, which indicate that the testator merely hoped or expected, or had a confident belief, that his wife would use the property for the support of herself and the children, and for the education of the children, which expressions have sometimes been construed to be mere precatory words. On the contrary, the words used expressly declare the purposes for which the property was given to her for her life, and to those purposes it must be devoted. If so, then the language used is not only quite sufficient to create a trust, but must be so construed, even though the word "trust" is not used, in order to insure the accomplishment of the purposes for which the property is declared to have been given. For, as was said on *Wylie* v. *White, supra:* "To create a trust, it is not necessary that the word should be employed in the instrument. It was said by Lord Eldon, in *King* v. *Dennison,* 1 Ves. & B., 273, that the word 'trust' not being made use of, 'is a circumstance to be attended to, but nothing more;' and if the whole frame of the will creates a trust for the particular purpose of satisfying which the estate is devised, the law is the same, though the word 'trust' is not used." And again, quoting from Hill on Trustees, 65: "Thus when a gift in a will is expressed to be *for the benefit of others,* or to be at the disposal of the donee *for* herself and children, or *towards* her support *and her family,* or to *enable* the donee to *provide for* or maintain his children

\* \* \* or where the gift is expressed to be made *to the end* or to *the intent* that the donee should apply it to certain purposes, in all these cases the terms employed have been held sufficient to fasten a trust upon the conscience of the donee \* \* \* showing that in every case the general purpose and intention of the donor, and not the use of one particular term or another, will decide the question whether a party does, or does not, take in a fiduciary character." These authorities, based as they are upon sound reason and common sense, satisfy us that this will should be construed as creating a trust in the wife for the accomplishment of the purposes declared by the testator. If so, it is clear, then, that the life tenant could not sell even her life interest, unless something can be found in the instrument creating the trust which would invest the life tenant with power to sell the life estate. This renders it necessary to consider the second branch of the inquiry : (b) Is there anything in the will which invests the life tenant with power to sell the life estate ? It is quite certain that there is no such *express* grant of power in the will, and if such power is conferred at all, it must be by implication. The contention, as we understand it, is, that such power may be implied from the following language used in the fourth clause of the will : "At the death of my wife, I direct that all of my estate, both real and personal, *that may be left* after supporting the family and educating my children, shall be divided among my children ;" and stress is laid upon the words which we have italicized, as implying that the testator intended and expected that some, at least, of the property should be sold. In view of the undisputed fact that some of the property left by the testator consisted of such things as would be consumable in the use, such as provisions, farming produce, horses, mules and farming implements, it seems to us that the most natural inference to be drawn from these words would be that the testator meant all of his property except such as might be consumed in the use for which it was given—all that may be left or all that remained after it had been applied to the uses for which it was

intended; rather than that the testator intended by those words, by *implication,* to invest the life tenant with the power of sale—rather a remote and strained implication by which to create so important a power as that of sale. This view is supported by the authorities cited in the argument, which need not be dwelt upon here; for even if it could be assumed that the testator intended, by the words relied upon, to invest the life tenant with power to sell, yet it is very obvious that, if such a power was conferred, it was conferred *solely* for the purpose of effecting the primary object of the testator—the support of the family and the education of the children—and there is no pretense that the sale was made for any such purpose; but, on the contrary, the undisputed fact is that it was made for the payment of the debts of the testator, and that every dollar of the proceeds of such sale was applied to such debts, we need not consider this point further. It was also contended that if the life estate was originally unencumbered with a trust, it terminated when the children attained their majority. We are unable to discover in the terms of the will any warrant for such a contention, and it may, therefore, be dismissed without further consideration.

3d. The next general inquiry is whether the sales of the land in question can be supported by the proceedings of the court of probate for Greenville County. Passing by any other questions raised or that might be raised, in reference to the effect of these proceedings, a conclusive answer to this question is found in the fact that those proceedings do not show that any judgment or order of sale was ever made by that court; and there is no evidence *aliunde* tending to show that any order of sale was ever made. The record of those proceedings, as offered in evidence, was, manifestly, not complete; and while it may be true that where a partial record does show that a final judgment was rendered by a Court of competent jurisdiction, and the only defect in the record is the absence of certain steps leading up to the judgment, the Court may infer from such judgment that the

necessary steps to be taken before such judgment could be properly rendered, had been taken. But where there is no final judgment, and the record only shows that certain steps leading up to the judgment had been taken, the fact that a judgment had been rendered cannot be inferred. *Brown* v. *Coney,* 12 S. C., 144. Indeed, the testimony *aliunde* in this case rather tends to show that no order of sale was ever granted by the court of probate, but that Mrs. Nannie W. Hunter, being advised by her father, who is characterized in the Circuit decree as a lawyer of high character and many years experience at the bar, that she had authority as executrix to make the sales, abandoned the proceeding in the court of probate before it culminated in any final judgment, and made the sales as executrix, for the deeds on their face so show, and they are signed by her as executrix; and no allusion whatever is made in these deeds to any proceeding in the court of probate. It is clear, therefore, that she derived no authority to sell this land from such proceedings.

Holding these views, we cannot concur in the view taken by the Circuit Judge, that the action was prematurely brought, and for that reason only the complaint should be dismissed. For if, as we have seen, the life estate was given to Mrs. Hunter burdened with a trust for the support of herself and the children; and if, as we have seen, she has violated such trust by selling the land without lawful authority, then it·seems clear that the plaintiffs, who are the children of the testator, have now a status in Court to assert and preserve such rights as they may be found to have in the premises.

This leads us to the fourth and last inquiry in the case—the question of subrogation. In the outset, the appellants raise the point that as no such question was raised by the pleadings, it cannot be raised now. While, under the judgment which we propose to render in this case, this point becomes immaterial, yet we may say that while the word "subrogation" does not appear to have been used in the answer, yet the essential facts out of which the

right of subrogation arises, to wit: that the lands were sold by the executrix under a supposed authority so to do, and the proceeds of such sale were applied to the debts of the testator; and the further fact that Nannie W. Hunter was permitted to testify, without objection, that she had sold the lands and had applied the entire proceeds of such sale to the payment of the debts of the testator, might be sufficient to show that such point is not well taken. We will, therefore, proceed to consider the question of subrogation upon its merits. In 24 Am. & Eng. Ency. of Law (1st ed.), at page 258, where the writer is discussing the doctrine of subrogation, we find, as an illustration of one of the instances in which the right of subrogation arises, the following language: "So where an executor sells real estate, and uses the proceeds in the payment of debts, under a mistake of his powers, and the purchaser is ousted by the devisee, the land, in equity, will be subjected to indemnify the purchaser to the extent to which his money was applied to the debts over and above the personal estate." See, also, 3 Pom. Eq. Jur., sec. 1300. But we need not go beyond the limits of our own State for authority upon this point. In *Cathcart* v. *Sugenheimer,* 18 S. C., 123, the property of a lunatic had been sold under an order of the Court of Common Pleas, made in a proceeding instituted by the committee of the lunatic, to which the lunatic was not made a party. Subsequently, the commission of lunacy was superseded, and Cathcart, the person who had been declared a lunatic, having thus been restored to his rights as a person *sui juris,* brought an action to recover certain property bought by the defendant, Sugenheiner, at the sale above mentioned. One of the defenses set up was that the defendant's money having gone to pay the debts of the lunatic, she had the right to be subrogated to the rights of the creditors whose debts had thus been paid by the defendant's money. The Court sustained the right of subrogation. In delivering the opinion of the Court, Mr. Justice McGowan uses this language: "Wherein did this sale differ from that of the property of a decedent

for the same purpose?" and then quotes with approval the following passage from Freeman on Void Judicial Sales, 51: "If by a sale of the lands of a decedent, his debts are paid, and it turns out that the sale is void, the purchaser has the right to be subrogated to the claims which he has by his purchase paid, and he has also the right to retain possession of the property as security for the repayment of the sums to which he is entitled." That case has been recognized and followed in the recent case of *Bailey* v. *Bailey,* 41 S. C., 337. But inasmuch as the question of the defendant's right of subrogation was not, *in terms,* made in the pleadings, and was not considered or decided by the Circuit Judge, it seems to us proper to pursue the course which was adopted in the case of *Bailey* v. *Bailey, supra,* and remand the case to the Circuit Court for the purpose of enabling that Court to pass upon the question of the defendant's right to subrogation, with leave to the defendants, if they shall be so advised, to amend their answer by setting up formally their right to subrogation.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, solely upon the ground of error in holding that the complaint should be dismissed, for the reason that the action was prematurely brought, and that the case be remanded to that Court for the purpose hereinabove announced.