## 9518

### MOBLEY *ET AL.* v. JACKSON *ET AL.*

(90 S. E. 23.)

1. EXECUTORS AND ADMINISTRATORS—POWER TO SELL.—Where testator directed, in clause 3, that all the rest and residue of his estate, both real and personal, of whatsoever nature and kind, be devised to his sons and his friend, executors, in trust for the execution of his will, with power to sell and dispose of the same, or any part, at public or private sale, at such time, on such terms, and in such manner as to them should seem meet to carry out his will, the executors had full power to sell the whole or any part of the property described in the third clause preparatory to its appraisal and division into nine equal parts pursuant to the will.

2. EXECUTORS AND ADMINISTRATORS — POWER TO SELL — EXECUTION. — Where executors were authorized by the will to sell personalty or realty to carry its terms into effect, the power being postponed

until the widow's death as to a house and lot which they were directed
to purchase for the use of the widow and her unmarried daughters,
the consent of the widow, the life tenant, to the sale of the house
and lot enabled the executors to make a valid conveyance before the
widow's death; neither of the daughters complaining.

3. EXECUTORS AND ADMINISTRATORS—PRESUMPTION AS TO DISCHARGE OF
DUTY.—Where executors sold a house and lot belonging to the estate,
it must be presumed that the money paid therefor is in the hands of
the executors waiting division, or that the devisees have received it,
since executors are presumed to have acted in good faith and to have
discharged their duty in accordance with law.

4. EXECUTORS AND ADMINISTRATORS—SALE OF LAND TO PAY DEBTS—SUB-
ROGATION OF PURCHASE.—Where an executor sells land, in excess of
the power conferred by will, to pay debts of testator, the purchaser
must be subrogated to the rights of the creditor, and can hold posses-
sion of the land as security for so much of the purchase money as
was paid on the debts.

Before BOWMAN, J., Columbia, December, 1915. Af-
firmed.

Action by Andrew J. Mobley and others against Lilla C.
Jackson and others. From a judgment dismissing the com-
plaint, plaintiffs appeal.

*Messrs. Halcott P. Green* and *Henry F. Jennings,* for
appellants, submit: *The will is to be construed as an entirety:*
59 S. C. 138; 82 S. C. 210; 42 S. C. 345. *Construing the
second and third clauses of the will alleged in the complaint
it is plaintiffs' contention that upon the purchase of the*
*premises in question by the then sole acting executor from
funds of the estate in 1873, although the title to the prem-
ises was taken in the name of the executor as such, that*
*immediately the premises so purchased became a part and
parcel of the estate of N. F. Bynum, deceased, and subject
to the provisions of his will to the same extent as though*
*he had possessed the land and devised it specifically:* Bail.
Eq. 236; 25 S. C. 149; 46 S. C. 230; 51 S. C. 271. *The
devise of the use of the premises to Emma J. during her*
*natural life or as long as she remained a widow gave her*

*a legal life estate or estate during widowhood in the premises:* Schouler on Wills (2d ed.), sec. 503; 2 Jarman on Wills, page 404; 90 Me. 463. *The rest and residue of his estate disposed of under the third clause of his will was what remained of his estate, exclusive of the lot in question, and this is the construction we contend for:* 2 DeS. Eq. 127; 1 Hill Eq. 94; 4 Rich. Eq. 25; 1 Strob. Eq. 114; 23 S. C. 259; 82 S. C. 211; 44 L. R. A. (N. S.) 810; 18 A. & E. Enc. of L. 725'; 9 Misc. (N. Y.) 653; 83 Hun. 612. *As to effect of power:* 68 S. C. 260; 43 S. C. 266; 51 S. C. 366; 36 Ohio 17; 15 Gray 503; 2 Rich. Eq. 137; 11 Rich. Eq. 157, 195, 196; 36 S. C. 384, 398; 71 S. C. 426.

*Mr. Robert Moorman,* for respondent, submits : *On termination of life estate, the premises became part of the residuary estate:* 32 S. C. 72; 31 S. C. 408; 87 S. C. 55; 1 Strob. Eq. 129. *As to sale by executors,* cite: 18 Cyc. 331; 1 Bail. 59; 58 S. C. 382; 50 N. J. L. 636; 9 S. C. 492; 27 S. C. 591. *Title in trustee:* 53 S. C. 6; 4 Rich. Eq. 485; 31 S. C. 23. *Vested rights:* 18 S. C. 339.

September 26, 1916.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This is an action for the recovery of a lot of land, in the city of Columbia.

The allegations of the complaint are, in substance, as follows :

(1) That Nathaniel F. Bynum departed this life on the 28th day of October, 1871, leaving of force his last will and testament, wherein he nominated and appointed the four persons hereinafter named as his executors; that John T. Bynum alone qualified and discharged the duties of the office, from the 5th day of December, 1871, until the 5th

day of January, 1881, when Julius A. Bynum also qualified.

(2) That the testator was survived by Emma J. Bynum, his widow, and eight children named in his will.

(3) That the second and third clauses of his will, are as follows:

Second. "I desire and order, that my executors herein-after named, shall purchase and pay for, out of my estate, a suitable house and lot in the city of Columbia, for the use of my wife, Emma J., during her natural life, or so long as she may remain a° widow, and, that during said term my daughters, Mary U. and Anna E., shall, with my said wife, occupy and have the use of said house and lot as a home, if they shall so long remain unmarried.

"And I desire that, from and after the decease or second marriage of my said wife (whichever shall first happen) the said house and lot to be purchased in Columbia, shall sink into and form part of my residuary estate, to be divided as the rest of my estate hereinafter mentioned."

Third. "All the rest and residue of my estate, both real and personal of whatsoever nature or kind, I give and devise to my sons, John T. Bynum, and Robert F. Bynum, and Julius A. Bynum, and my relative and friend, Robert C. Shiver, my executors hereinafter appointed, in trust, for the execution of this my will, with power to sell and dispose of the same, or any part thereof, at public or private sale, at such time and upon such terms, and in such manner, as to them shall seem meet, for the purposes of carrying into effect my will and desire, which is as follows:

"That the said residue of my estate, shall be appraised and divided into nine equal parts, by three or more apprais-ers to be selected by my said executors. That upon the said division being made, my said executors shall, as trutees, hold one-ninth part thereof in trust, for my wife, Emma J. Bynum, for and during the term of her natural life, and to suffer and permit her to take, have, and receive the rents,

income, issues and profits thereof, and arising therefrom, and after her death, to and for my children living at the time of her death, to be equally divided among them, my said children, share and share alike, to them, their heirs and assigns, free and discharged from all other and further trusts, absolutely and forever, the child or children of a deceased child, to take the share that the parent, if living, would have received."

(4) That John T. Bynum, sole qualified executor, purchased the house and lot described in the complaint, for which he paid, from the funds of the estate, the sum of $3,550. That the said lot was conveyed to the said John T. Bynum, as executor, on the 10th day of June, 1873, and the deed was duly recorded, on the 15th of August, 1873.

(5) That Emma J. Bynum, the widow, took possession of the said house and lot and occupied the same, together with Mary U. Bynum and Anna E. Bynum, the unmarried daughters of the testator.

(6) That all the debts were paid and settled out of the personal assets.

(7) That Anna E. Bynum was married on the 3d day of June, 1874, and Mary U. Bynum departed this life in 1898. That Emma J. Bynum, the widow, did not remarry. She died on the 22d of April, 1914. That the said lot upon her death became the property of the remaindermen.

(8) That the defendant, Lilla C. Jackson, claims title to the lot, under a deed of conveyance from Emma J. Bynum, the life tenant, and an attempted or alleged conveyance from John T. Bynum and Julius A. Bynum, as executors of Nathaniel F. Bynum, which conveyance, plaintiffs allege, was without authority, null, and void, on the ground that the executors were without authority to make the same.

Certain of the defendants demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, in that it shows upon its face that the said executors, John T. Bynum and Julius A. Bynum, as execu-

tors of the last will and testament of Nathaniel J. Bynum, deceased, did have authority to make the conveyance mentioned in said complaint. In sustaining the demurrer and dismissing the complaint, his Honor, the Circuit Judge, said:

"My conclusion is that the real estate described in the complaint herein was devised under the will of Nathaniel F. Bynum to his widow, Emma J. Bynum, for life, with a vested remainder in fee to his executors in trust, for the purposes stated in said will, with full power of sale to such executors as trustees."

The appellants' attorneys in their brief thus state the assignments of error, on the part of his Honor, the Circuit Judge, upon which they rely:

(1) In holding that under the will the remainder in fee in the lot in question was vested in the executors as trustees, and in not holding: (a) That the lot purchased by the executor, under the terms of the will, was devised upon the death or marriage of the widow to the children of testator living at the time of her death, to be equally divided among them, etc., free and discharged from all trust and limitations; (b) and that upon the death of the life tenant, she never having remarried, the statute executed the use, and vested the title in the children of the testator surviving the life tenant, and the children of such child or children as died before the life tenant leaving children, who took free and discharged of all trusts.

(2) That he erred in holding that the executors as trustees had power of sale over the real estate described in the complaint, and should have held: (a) That no power of sale of the lot in question was given to his executors, to his executors as trustees, or to his trustees, but that the title at the death of the widow, vested in the remaindermen, at which time the will provided, "it shall fall into and become a part of my residuary estate;" (b) that the power of sale given to the trustees was expressly limited to dividing the estate for partition into nine equal parts, and to the allotting

of each part to the devisees as directed, the shares of the widow and daughters and minor sons to be held by the trustees for them, and the shares of the adult sons to be conveyed by the executors as directed; (c) upon the death of the life tenant the title and right of possession of the lot in question vested in the plaintiffs, who are admitted to be such children and the representatives of such children.

The words, "all the rest and residue of my estate, both real and personal, of whatsoever nature or kind," in the third clause, embrace all the real and personal property of the testator's estate, except the lot in dispute and a few articles of personal property mentioned in the first clause. The executors unquestionably had full power to sell the whole or any part of the property described in the third clause, preparatory to its appraisal and division into nine equal parts, by three or more appraisers, to be selected by the executors. The appraisal and division were to be made of such property as had not been sold and of the proceeds of such as had been converted into money. The testator contemplated that the division should be made before the death of the widow, as the will provides:

"That upon the said division being made, my said executors shall, as trustees, hold one-ninth part thereof, in trust for my wife, Emma J. Bynum, for and during the term of her natural life, and to suffer and permit her to take, have, and receive the rents, incomes, issues and profits thereof, and arising therefrom."

On the other hand, it was not the intention of the testator that the house and lot should become a part of the residuary estate, nor be subject to sale or a division until the death of the life tenant, when it was his intention that said property should "sink into and form part of my residuary estate, to be divided as the rest of my estate hereinafter mentioned." The lot and all other property, were affected with the same trusts, except in one respect, to wit, the executors were empowered to sell the property described in the third clause

during the lifetime of the widow, but the testator did not contemplate a sale of the lot until the death of the life tenant. A fair intendment from the allegations of the complaint is that the executors conveyed the lot by and with the consent of the life tenant.

The first question we will consider is whether the consent of the life tenant enabled the executors to make a valid conveyance before the death of the life tenant, as they unquestionably had such power after her death. The executors derived their power to sell the lot from the third clause of the will, and the exercise of their power was merely postponed in order that the widow might enjoy the use thereof during her lifetime. The only parties intended to be benefited by the postponement were the life tenant and the two unmarried daughters of the testator, neither of whom is here complaining. The consent by the life tenant to the sale of the lot by the executors before the death of the life tenant might reasonably have been supposed to be beneficial rather than prejudicial to the rights of the residuary devisees, as it obviated the necessity of waiting until the death of the life tenant before there could be a division of the residuary estate. If the life tenant had surrendered her life estate, neither she nor any other devisee could thereafter have interposed an objection to a sale of the property; and the same result follows, when she gave her consent. The executors were empowered to sell, and a sale implies that there was a valuable consideration. In *Sires* v. *Sires,* 43 S. C. 266, 21 S. E. 115, the Court says:

"A sale implies a consideration, and, when the power is given to sell, and the person conveys without a consideration, or one merely nominal, this constitutes a breach of the trust, and none of the participants therein can take anything by such conveyance."

The executors are presumed to have acted in good faith and to have discharged their duty in accordance with law *"Omnia presumuntur rite esse acta."* Therefore it must

be presumed that the money paid for the lot is either now in the hands of the executors, awaiting to be divided among the devisees, or that they have already received it. The doctrine of *ultra vires* is inapplicable, when the party claiming its protection retains the benefits of the transaction. *Eastern Building & L. Asso.* v. *Williamson,* 189 U. S. 122, 23 Sup. Ct. 527, 47 L. Ed. 735; *Williamson* v. *Association,* 54 S. C. 582, 32 S. E. 765, 71 Am. St. Rep. 822; *Wetmore* v. *McElroy,* 96 S. C. 182, 80 S. E. 266, Ann. Cas. 1916b, 79.

In the case of *Hunter* v. *Hunter,* 58 S. C. 382, 36 S. E. 734, 79 Am. St. Rep. 845, the rule is stated that subrogation need not be specifically pleaded, where facts set up in the answer sustain such plea, and where testimony showing it was admitted without objection; but where such point has not been made below, the case will be remanded, with leave to defendants to so amend their answer as to set it up. Where executor sells lands in excess of the power conferred by will, to pay debts of testator, the purchaser will be subrogated to rights of creditor, and can hold possession of the land, as security for so much of the purchase money as was paid on such debts. This presents another reason why the demurrer should not have been overruled.

Judgment affirmed.