## WALLACE v. CRAIG.

1. Findings of fact by the Circuit Judge from testimony heard by him, approved.
2. In 1874 land was conveyed to C. trustee for L. (a married woman), and her children (L. then having children), with power in the trustee "to sell, dispose of, and convey" on the written request of L. In 1876, money being needed to pay taxes and other expenses on this land, L. borrowed money for the purpose from A., which loan, at her written request, was secured by a mortgage of the land, executed by the trustee to A. Thereafter, at the request of L., who desired longer indulgence and a reduction in the interest, W. purchased this mortgage and afterwards brought action of foreclosure against C., L., and her children. *Held,* that the mortgage was valid as to the interest of L. in the land, which interest was that of a tenant in common with her children living at the date of the deed; but that the interests of the children were not validly mortgaged.

Before COTHRAN, J., Chesterfield, September, 1886.

This was an action by Emily H. Wallace against Laura S. Craig and others. The opinion states the case.

*Mr. H. H. Newton,* for appellants.

*Mr. R. T. Caston,* contra.

November 29, 1887. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. On July 16, 1874, one Sallie P. Craig executed and delivered a deed of certain lands to W. D. Craig, as trustee, "to hold for the sole and separate use, benefit, and behoof of Mrs. Laura S. Craig and her children, all the real estate I now own on the north side of Thompson Creek, &c., to have and to hold all and singular the said premises unto the said W. D. Craig, trustee, as aforesaid, his heirs and assigns and successors; and I do hereby bind myself, my heirs, &c., to warrant, &c. * * * It is further agreed by and between the parties, that upon the written request of the said Laura S. Craig, the said W. D. Craig, trustee, as aforesaid, may sell, dispose of, and convey any part or parcel or the whole of the said tract of land,

hereby giving him full authority to execute good and sufficient titles thereto and to receive the purchase money and paying the same over to the said Laura S. Craig, or to her order," &c.

In 1876, Laura S. Craig, for the purpose, as she stated, of paying the taxes on the land and other necessary expenses, borrowed one hundred dollars from one W. A. Carrigan, and gave to him her note for the money, bearing interest at the rate of 20 per cent. per annum, with Thomas F. Mulloy as surety. At the same time, in order to obtain the money, she also by written request caused the trustee, W. D. Craig, to execute, as further security to the said Carrigan, a mortgage of a part of the said lands, described as containing 240 acres, more or less. In 1883 the said Laura S. Craig, being pressed for payment, in order to get further indulgence, and to reduce the rate of interest, applied to one J. T. McNair to assist her, giving him written authority to settle the mortgage; and it seems that he was able to induce the plaintiff, Mrs. Wallace, to purchase the mortgage debt, paying to Carrigan the face of the note with interest at 20 per cent. per annum, and agreeing voluntarily to reduce the interest in the future to 10 per cent.

The note was still not paid, and after a year's delay, the plaintiff instituted these proceedings to foreclose the mortgage and to "require the trust estate to repay the money advanced." The children of Laura S. Craig were made parties; as also the administrator of the surety, Thomas F. Mulloy, who, in the mean time, had died. The latter interposed the statute of limitations, and as to him the complaint was discontinued. The trustee, W. D. Craig, and Laura S. Craig answered, admitting that Laura S. did execute the note for the money borrowed, and did direct in writing the trustee to execute the mortgage, which was done; but say "they have been informed and advised, and they now allege, that said deed of trust contains no power authorizing the execution thereof, and that the attempted execution was a nullity," &c. They also allege that the mortgage is void for want of certainty in the description of the premises embraced. The children of the said Laura S. make the same defence, and insist that the title to the lands is in them "free from the attempted mortgage of W. D. Craig, trustee," &c.

The cause came on to be heard by Judge Cothran, who held that there was nothing in the defence as to the alleged want of certainty in the description of the lands. He also held with the plaintiff upon the main question in the case, saying: "Without undertaking to go into the nice learning upon the subject of the execution of powers, or even to follow the learned counsel in their exhaustive and ingenious arguments, it seems to me, that the plaintiff should have the money which is due to her upon the principle that self-preservation is the first law of nature, a principle so broad in its operations and so univerally recognized that even trust estates constitute no exception to it. If the power conferred by the deed did not justify the contracting of this debt to preserve the trust estate for the defendants, the court would have ordered it upon proper application for that purpose, and improvident as it may have been in the first instance, as to the rate of interest, this plaintiff is in no wise chargeable therewith, and should not be punished for her generosity and kindness in reducing the rate of interest," &c. He gave a decree of foreclosure, and ordered the land sold for the payment of the debt, and should the proceeds of sale be insufficient to pay off said costs and disbursements and the debt and interest aforesaid, that the plaintiff have judgment for such balance against the said Laura S. Craig and the said William A. Mulloy as administrator as aforesaid (of the surety, Thomas F. Mulloy).

From this decree Mrs. Laura S. Craig and her children, and the trustee, W. D. Craig, appeal to this court upon the following grounds:

"1. Because his honor erred in holding that it appeared from the testimony that as far back as the year 1876, the affairs of the estate were in a desperate condition, and to prevent the sale of the land or a portion of it for taxes, Laura S. Craig negotiated a loan from W. A. Carrigan, which constituted respondent's claim in this case; when, it is respectfully submitted, that there is no proof of this fact.

"2. Because his honor erred in holding that said Laura S. Craig prevailed upon the plaintiff, Mrs. Wallace, to assume the ownership of the claim against her; when, it is respectfully submitted, that there is no proof to sustain this finding of fact.

"3. Because his honor held in effect that the mortgage given by W. D. Craig, trustee, to W. A. Carrigan was valid—that said trustee had power to execute the same under said deed of trust; and in this, it is respectfully submitted, there was error.

"4. Because his honor erred in holding in effect that the beneficiaries under said trust deed were estopped from denying the validity of said mortgage.

"5. Because his honor erred in holding that the respondent 'should have the money that was due to her on the principle that self-preservation is the first law of nature, a principle so broad in its operation and so universally recognized that even trust estates constitute no exception to it;' when, it is respectfully submitted, that there is no proof to show that the loan from Carrigan to Laura S. Craig was for the preservation of the trust estate.

"6. Because his honor erred in holding that respondent had higher equities for the payment of her claim than her assignor, when, it is respectfully submitted, that she took the assignment of the alleged mortgage debt with all the infirmities that pertained to it in the hands of the assignor.

"7. Because his honor erred in holding that the whole tract of land covered by the alleged mortgage was liable for this debt, when only the interest of Laura S. Craig could, in any event, be subjected to its payment.

"8. Because his honor should have held that the alleged mortgage was invalid because of a lack of power in the trustee to execute the same.

"9. Because his honor should have held that the trust estate was in no way liable for the payment of the note of Laura S. Craig, and should have dismissed the complaint, or have given simple judgment against her upon the said note, and awarded execution thereon."

10. (This exception was abandoned.)

As we understand it, the defence rests mainly on the fact that Mrs. Laura S. Craig was a married woman at the time of the execution of the trust deed to W. D. Craig, trustee, and also of the mortgage to Carrigan, yet no such allegation appears in the pleadings, nor indeed in the evidence except once rather obscurely, where Carrigan in his testimony says: "About 1876,

I was approached by one Mr. Craig, husband of Mrs. Laura S. Craig, for the purpose of borrowing $125." But as the fact seemed to be assumed on all sides that she was a married woman, we will take it as admitted.

Exception 10 was properly abandoned at the hearing. The complaint had been in effect discontinued as to the administrators of the surety, Mulloy, by the plaintiff's attorney, and thereupon an order was granted dismissing the complaint as to him ; and, of course, it was an oversight on the part of the Circuit Judge to embrace him in the decree.

Exceptions 1, 2, and 4, relate merely to matters of fact. We have read the testimony carefully, and we must say that the findings of the judge are not without evidence to support them. Mrs. Craig certainly was in great need of money as shown by her anxiety to obtain it. It seems that her husband (name not given) made application to Carrigan to borrow for her ; that she agreed to give 20 per cent., and a mortgage of the tract of land to secure it, and attached to the mortgage the following request in writing : "Mr. W. D. Craig : For the purpose of paying the taxes on my land, and other necessary expenses, I hereby request you to execute this mortgage to W. A. Carrigan, May 20, 1876. (Signed) L. S. Craig." Besides, the clerk of the court, Thomas F. Mulloy, attached his official certificate to the mortgage, that the land covered by it "is not incumbered with judgments, or in any other way whatever ; and, further, that the said W. D. Craig has authority, upon the written request of Mrs. Laura S. Craig, to execute any deed or mortgage for a part or the whole of the said real estate. (Signed) Thomas F. Mulloy."

It seems to us, it was satisfactorily shown that Mrs. Craig needed the money for the payment of taxes on the land and other necessary expenses ; that in consenting to loan it, the credit was given on the faith of the land and the mortgage thus formally executed ; and also that Mrs. Wallace, the plaintiff, was induced by Mrs. Craig (through her friend and agent, McNair) to purchase the mortgage from Carrigan, and to reduce voluntarily the interest by one half—from 20 to 10 per cent.—in kindness to Mrs. Craig, who repeatedly before and after the purchase confirmed the mortgage as her own, and promised payment. But as

the mortgage purports to have been given by Mrs. Craig under the power in the deed of trust, we will not rest our judgment on the ground indicated, that the money loaned was necessary for the preservation of the trust estate.

All the other exceptions in different forms substantially make the point, that the alleged mortgage, executed by W. D. Craig, at the instance and written request of Laura S. Craig, and now owned by the plaintiff, "was invalid because of a lack of power in the trustee to execute it." The deed of trust from Sallie P. Craig was executed in 1874, after the adoption of the constitution of 1868, and the act of 1870 to carry its provisions into effect; and the mortgage to Carrigan was executed in 1876, before the amendment of 1882, repealing the power, which had been given to a married woman to contract except "as to her separate estate." So that it follows that at the time these transactions took place, the law of this State was well settled, that the power of a married woman over her separate estate was absolute and unqualified.

As Mr. Kelly, in his late work (1882) on the "Contracts of Married Women," at page 516, says in condensed form of the South Carolina law: "As shown in a previous discussion the object of the statute (1870) was to enlarge what was theretofore known as the wife's separate estate, so as to embrace all acquisitions, all classes of property, past and future, that, if she were sole, would vest in her as property, and also to enlarge her power over said property, to the same extent as if she were sole, and at the same time to shield that separate estate from liability to her husband's debts, against her will; and, therefore, under the statute the rule is, that with respect to her separate estate, she is a *feme sole* in every particular." This view of the learned author will be found to be abundantly sustained by the following cases : *Ross* v. *Linder*, 12 *S. C.*, 592; *Clawson* v. *Hutchinson*, 11 *Id.*, 326 ; *Witsell* v. *Charleston*, 7 *Id.*, 97 ; *Pelzer, Rodgers & Co.* v. *Campbell & Co.*, 15 *Id.*, 581; and *Witte* v. *Wolfe*, 16 *Id.*, 268.

All the authorities agree that the provisions of the constitution or laws which dispense with the necessity of a trustee and declare a statutory separate estate, make the interest legal, instead of

being, as formerly, "equitable." In this case the constitution and laws, which were of force when the transaction took place, certainly made Mrs. Craig's interest in the land mortgaged legal, and gave her the absolute right as a *feme sole* to dispose of it in any way she thought proper. This comes from the fact that the transaction occurred before 1882, when the amendment of the law was passed restricting the right of a married woman to contract, under which some difficult questions have arisen. As the mortgage was executed by Mrs. Craig's written direction, she receiving the consideration which the mortgage was to secure, and for years in various forms and in different ways ratifying and confirming it as her own mortgage, it is precisely as if she, having the powers of a *feme sole* under the law, had executed it herself. See the case of *Stroman* v. *Varn*, 19 *S. C.*, 307, and authorities there cited.

But it may be said that these parties did not act with reference to the constitution and laws then of force in the State, but chose to proceed by deed of trust, appointing a trustee to hold the legal estate, according to the unwritten doctrine of equity which, as to the separate estate of a married woman, prevailed before the adoption of the constitution, and therefore those doctrines alone should be applied as the standard of their rights. It may be. that parties are not precluded from making their own arrangements about their own property. I do not, however, see how that line of conduct upon their part could affect strangers, who dealt with them and are supposed to have acted with reference to the laws then of force. See *Witsell* v. *Charleston, supra,* and *Oliver* v. *Grimball,* 14 *S. C.,* 565.

But suppose we are mistaken in the view presented, and we must in this case ignore the constitution and laws then of force, and consider the case exclusively with reference to the doctrines of equity which prevailed before the constitution, we think the result in that case would be the same. In this State equity alone had built up a system of rules in reference to the difficult and perplexing question of the powers of a married woman over her separate equitable estate. The lead in departing from the English rule upon the subject was taken by the Chancery Court of South Carolina, which declared that it "was the settled law of

this State, that where property is given or settled to the separate use of a married woman, she has no power to charge, encumber, or dispose of it, unless in so far as power to do so has been conferred on her by the instrument creating the estate, which power must be strictly pursued. This is the reverse of many English cases, which held that she is a *feme sole* with respect to her separate property, and may charge and dispose of it as she pleases, unless in so far as she is expressly restricted by the instrument," &c. But it must not be overlooked that the Equity Courts regarded as established another doctrine, which was clearly stated . by Chancellor Wardlaw in *Aaron* v. *Beck*, 9 *Rich. Eq.*, 415 : "·The distinction, although nice, is completely established between a gift to one indefinitely, with a general power of appointment . superadded, and a gift to one for life, with like power of appointment. In the former case the estate passes absolutely to the donee, and in the latter case an estate for life only passes to the donee, with the power of appointing the inheritance or succession, which must be exercised to be effectual," &c.

Now, applying these rules to this case, how would the matter stand ? The deed of trust conveyed the legal estate to the trustee and his heirs "for the sole and separate use, benefit, and behoof of Laura S. Craig and her children. * * * It is further agreed by and between the parties to these presents, that upon the written request of the said Laura S. Craig, the said W. D. Craig, trustee, may sell, dispose of, and convey any part or parcel or the whole of the said tract of land, hereby giving him full authority to execute good and sufficient titles thereto and to receive the purchase money, and paying the same over to the said Laura S. Craig or her order," &c. It is quite clear that the equitable interests declared here were not for life, but were "indefinite" in character ; and the only question is, whether the deed of trust gave to Laura S. Craig what is called or was called "a general power of disposal." It seems to us there can be no doubt that such general power was given, and, as a consequence, to the extent of her interest she had the absolute property—the *jus disponendi*, with all its incidents—such as to use, have, charge, mortgage, sell, or devise the same.

In *Reid* v. *Lamar* (1 *Strob. Eq.*, 27), the words of the settle-

ment were, "to have and to hold the sole discretion and guidance thereof—full and free disposal," which, as will be perceived, were not as full and general as the words here, viz., "sell, dispose of, and convey," with leave to take the purchase money without accountability. It was in that case held, that the power did not authorize Mrs. Jane Reid, the married woman, to make personal contracts, such as ordinary notes; but Chancellor David Johnson said in his Circuit decree: "The deed here confers on the wife the sole direction and the full and free disposal of the property—powers as ample as any owner can exercise over property in which he has an absolute and unqualified right; and it is not questioned that under this power she might have disposed of it by parol or written contract, with or without consideration or by will, or that it would be bound if she had mortgaged it for the payment of these debts," &c.

In *Porcher* v. *Daniel* (12 *Rich. Eq.*, 353), the same marriage settlement was again before the court upon the very point indicated by Chancellor Johnson in the former case, viz., as to the power of the wife to charge or dispose of the property itself. Mrs. Jane Reid, the married woman, had died in the meantime, during the life of her husband, leaving a will not expressly included in the power by which she disposed of the trust property, and the question was then made, whether the power gave her the right to dispose of the property itself, although the court had previously decided that it did not give her the right to charge it by general personal covenants such as ordinary notes. The court held, notwithstanding the former decision as to the notes, that she had the power to charge or dispose of the property itself. Chancellor Inglis, in delivering the judgment of the court, quoted with approbation the remark of Chancellor David Johnson, that she might dispose of it by will or bind it by a mortgage, hereinbefore referred to, and said: "A married woman, having a separate estate, and having also a general and absolute power of disposition over it, may charge or alien it, or any part of it, or partially or wholly, temporarily or permanently, divest herself of her interest in it, or in any part of it, in any of the modes in which the same kind of property or things may be legally charged or aliened, &c., by one who is *sui juris*, only her intention to do

this must be clearly manifested," &c.  See *Wilson* v. *Gaines,* 9 *Rich. Eq.,* 421; *Aaron* v. *Beck, Ibid.,* 412; *Pulliam* v. *Byrd,* 2 *Strob. Eq.,* 142; *Bradly* v. *Westcott,* 13 *Ves.,* 445.

As Mrs. Jane Reid, under her general power of "sole discretion and guidance," could dispose of the property by will (a mode not expressly indicated in her general power), and could, as Chancellor Inglis as late as 1866 said, "charge or alien it, or any part of it, or partially or wholly, temporarily or permanently, divest herself of her interest in it, or in any part of it, in any of the modes in which the same kind of property or things may be legally charged or aliened, &c., by one who is *sui juris,*" I am unable to comprehend why Mrs. Craig, under her general power of disposal, should not have the right to charge the estate, or her interest in it, with a mortgage, even under the equity doctrine which makes the distinction between *property* and mere *power.* Confessedly she had the right to dispose of the land, with or without consideration—to give it away or to sell it and throw the purchase money into the ocean ; and, in my judgment, she had the right to execute the mortgage.

Besides, there can be no doubt that a mortgage is within itself a contract—a contract not identical with the debt it is given to secure, but a contract intended to charge certain specified property, and therefore necessarily made *with reference to that property.*  See *Gillett* v. *Powell, Speer Eq.,* 143; *Nichols* v. *Briggs,* 18 *S. C.,* 476; and *Plyler* v. *Elliott,* 19 *Id.,* 257. "We have seen that a married woman's contracts are binding only when made with respect to her separate estate.   Now, her contracts can be so made when they are express or implied charges on the separate estate—express when she expressly charges the estate, such as specific charges, mortgages or lien, and when she by express words charges the contract on the estate" (*Kelly,* 275, and notes).   Or, as Mr. Bishop says, "In some States a married woman has not the general power of contract, and so cannot make a valid promissory note, but she can convey her lands. Then if she executes her note and mortgage, though the note is invalid as such, the mortgage to secure it is, as we have already seen, good." 2 *Bish. Married Women,* section 306, and authorities.

But the most difficult question still remains.  What quantity
of estate did Laura S. Craig, as original donee, take under the
deed of trust, without reference to its being legal or equitable ?
In some respects the deed was inartificially drawn.  It is obvious
that Sallie P. Craig, the donor, a daughter of Laura S. Craig,
intended to convey the land to her mother, Laura S., primarily
for her benefit, and incidentally for that of her children ; that
the mother should take a life estate for the use of herself and
children, and at the death of her mother to be transmitted to the
latter, of whom she was one.  This is shown by making it a
"sole and separate estate," which was only necessary to protect
the estate of a married woman, and also by the power given to
her to dispose of it, and receive the purchase money without
accountability.  If such intention had been properly expressed,
there would have been much less difficulty.  But the deed can-
not be so construed.  The terms are, "for the sole and separate
use of Mrs. Laura S. Craig and her children."  If the subject
had been personalty, these words would have given Mrs. Craig
an absolute estate, but it was land; and, although the authori-
ties upon the subject are somewhat conflicting, we suppose that
it must fall under the second rule adopted in *Wilds's Case* (6
*Coke*, 16), as follows : "If A devises his lands to B, and his chil-
dren or issue, and he then have children or issue of his body,
then his express intent may take effect according to the rule of
the common law, and no certain and manifest intent appears in
the will to the contrary, therefore in such case they shall have
but a joint estate," &c.  See *Reeder* v. *Spearman*, 6 *Rich. Eq.*,
94 ; *Shearman* v. *Angel, Bail. Eq.*, 351 ; and *Johnson* v. *John-
son, McMull. Eq.*, 345 ; *Feemseter* v. *Good*, 12 *S. C.*, 573.

Now, assuming that Laura S. Craig was merely a tenant in
common with her children, how does that affect her power of dis-
posal, which in terms extends to the whole land ?  That touches
the subject of powers appurtenant and collateral, as to which
there are in the books many very refined distinctions.  But from
the view we take, it will not be necessary to go into the nice and
perplexed learning upon the subject.  We have already endeav-
ored to show that the general power of disposal given to Mrs.
Craig, in addition to the interest originally conveyed to her, had

the effect of giving her the property in the land, with the absolute right of disposal in any of the ways allowed by law. But as that was only accomplished by the union of the direct gift with the power of disposal, we hold, with some hesitation, that her right to encumber the land must be limited to the interest given to her, which was that of a tenant in common with her children, and to that extent the mortgage is good and enforcible. "A power may, with reference to the different estates in the land over which it rides, have different aspects. It may, in regard to one, be a power appendant; in respect to another, a power in gross. Thus, where an estate is settled to A for life, remainder to B in tail, remainder to A in fee, and A has a power to jointure his wife after his death, this power is collateral or in gross as to the estate for life, but appendant or appurtenant as to the remainder in fee. It may affect the latter, but can never attach on the former." 1 *Sug. Pow.* (Law Library Edit.), *45.

The judgment of this court is, that the judgment of the Circuit Court, subject to the modifications herein announced, be affirmed.

MR. CHIEF JUSTICE SIMPSON and MR. JUSTICE MCIVER. While we do not assent to many of the views advanced in this opinion, we concur in the result.