## 11381

### BLACK v. HARMAN

#### (120 S. E., 705)

1. TRUSTS—NO MERGER AND STATUTE DOES NOT EXECUTE TRUST WHERE LIFE BENEFICIARY TRUSTEE HAS DUTIES TO PERFORM.—Under a devise of realty to testator's daughter "to have and to hold to the use of herself and her children during her life, and then to her children absolutely, share and share alike," *held,* that there was no merger of the life estate of the daughter, and the equitable estates of the daughter and her children and the trust was not executed by Civ. Code 1922, § 5450, as the daughter had discretionary duties to perform.

2. TRUSTS—USE NOT EXECUTED; TRUSTEE HAVING ACTIVE DUTY.—A use cannot be executed if there is a duty to be performed by Trustee.

Before RICE, J., Newberry, December, 1922.    Reversed.

Action by Francis C. Black against Harriet F. Harman and others.    From an order overruling demurrer to complaint the named defendant appeals.

*Messrs. Eugene S. Blease* and *Dominick & Workman,* for appellants, cite: *In construing will intention should be ascertained:* 9 S. C., 229. *Estate of Harriet F. Harman and her children under will:* 66 S. C., 155; 107 S. C., 265; 91 S. C., 404; 87 S. C., 55; 72 S. C., 179; 79 S. C., 551; 104 S. C., 95; 46 S. C., 522; 27 S. C., 514. *Legal title of each child remained in such child during his or her natural life:* 1 Hill 413; 36 S. C., 365; 116 S. E., 10. *If statute was executed life tenant and her children became tenants in common:* 46 S. C., 522; 27 S. C., 514. *And it became subject to partition among them:* 3 Code, 1922, Sec. 5292; 68 S. C., 478. *Trust arises by operation of law and is not testamentary:* 39 Cyc., 34, 169; 15 S. C., 164.

*Necessary elements of a valid trust:* Bisp. Eq., 9th Ed., 118; 40 Cyc., 1727, 1731; 39 Cyc., 34, 58, 29 S. C., 466; 52 S. C., 88; Hill Trusts 66; 77 S. C., 454.  *Division of rents and profits during life of tenant would frustrate scheme of will:* 45 S. C., 106.  *If life estate was impressed with trust for child it was not in equal shares:* Riley Eq., 205; Speers Eq., 328; 2 Strob. Eq., 69; 45 S. C., 102; 52 S. C., 88.

*Messrs. George B. Cromer* and *B. B. Hare,* for respondents, cite: *Devise was to use and benefit of life tenant and her children during her life and they took the life estate per capita:* 12 S. C., 573; 10 Rich. Eq., 295; 58 S. C., 388; 100 S. C., 225.

December 18, 1923.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The following statement appears in the record:

"This is an action against the defendant, Harriet F. Harman, the mother of the plaintiff, for an accounting of the rents and profits of certain lands described in the complaint, which lands had been devised to the defendant by her father, Frederick H. Dominick, in the year 1891.  The plaintiff claims 'that under the terms of the devise she has a vested interest in the income from the said lands to the extent of one-tenth thereof, the said income being subject to equal distribution among the said Harriet F. Harman and her said children,' and that she 'is entitled to an accounting and to her distributive share of the income from the said lands,' and demands judgment for such alleged share.  The other defendants are the children of Harriet F. Harman, and brothers and sisters of the plaintiff.  There are in all nine children, all of whom were living at the time of the death of Frederick H. Dominick on the 24th day of July, 1891, and are now living, except the defendant J. W. Harman, who has died since the commencement of this action,

intestate and unmarried.    His death does not affect the issues in the action.

"The action was commenced February 23, 1920, and the defendants duly answered, admitting that Harriet F. Harman had had exclusive control of the said lands; had received the annual rents and income; had used same, for the benefit of herself and children; that all of the said children had been treated alike; that she had kept up the land, paid the taxes on same, and maintained herself and family; that the plaintiff is married and living with her husband apart from the defendants; but the defendant, Harriet F. Harman, has largely contributed to her support and maintenance, the plaintiff having received more from her mother than any of the, other children.    The defendant Harriet F. Harman further claims that she has a life estate in the said lands, with the right to use the income therefrom as she may desire without accounting, and that the children have a vested remainder in the said lands, and are entitled to the same upon her death, share and share alike.    She denies that the plaintiff is entitled to an accounting and any distributive share of the income from the lands, and denies that she, has any right, title, or interest in or to the rent or income or profits derived from the said lands.

"The lands devised to Harriet F. Harman were devised to her 'to have and to hold to the use and benefit of herself and her children during her life, and then to her children absolutely, as in the case of each of my other children.' The devises in the case of each of the other children were made subject to the same uses and limitations as are prescribed in the devise to his son, Jacob L. Dominick, which was 'to have and to hold the same during his natural life for the use and benefit of himself and children, and at his death to go to his children absolutely, share and share alike, the children of a predeceased child to take the share to which their parent would have been entitled.' Frederick H. Dominick was survived by five children.

"On September 23, 1921, the attorneys for the defend-
ants gave notice of demurrer, in writing, to the attorneys
for the plaintiff, upon the ground that the complaint does
not state facts sufficient to constitute a cause of action, in
that the plaintiff has no such interest as is alleged in the
complaint in the income, rents, and profits received from the
lands described in the complaint, nor is the plaintiff entitled
to an accounting thereof or to any of the relief demanded
in the complaint.

"On May 10, 1920, the case was referred to the Master
for Newberry County for his report on all issues, but by
consent the issues of law were withdrawn from the Master,
to be determined by the Court, and at the December term,
1922, the case was marked heard, and written arguments
submitted to the presiding Judge."

On the 23d of February, 1923, his Honor the Circuit
Judge, filed the following order:

"The principal facts in the above case are undisputed.

"Frederick H. Dominick, of said County, died in 1891,
seized and possessed of considerable lands and personal
property. He was survived by five children and several
grandchildren, among them being his daughter, the defend-
ant Harriet F. Harman, and her children, of whom the
plaintiff is one, and the others are made defendants.

"The said Frederick H. Dominick left a will, the thir-
teenth clause of which is as follows: 'I will to my daughter
Harriet Harman my Tinsley place and my Carlisle place,
to have and to hold to the use and benefit of herself and her
children during her life, and then to her children absolutely,
as in the case of each of my other children.'

"All of the said children of Harriet F. Harman, the plain-
tiff being one, have long since attained their majority. The
said Harriet F. Harman at, or about the date of the death
of the testator, went into possession of the said lands, and
is still in possession of same. The plaintiff claims that she
is entitled to a distributive share of the rents and profits

of said realty, which the defendant denies. A proper construction of the above set out clause of the will in question will settle the issue.

"The only safe rule in construing a will is to assume that the testator means what he says, if the language is clear and unmistakable. This is the case before us. The property in question is to be used by the defendant Harriet F. Harman for her own benefit and that of her children so long as she lives. The possession of the land is vested in her for life, but impressed with a trust in favor of the children, to the effect that they shall share with the mother whatever benefits may be derived from the use of the lands, and as to such benefits in the way of rents, profits, etc., the mother and children are tenants in common in equal shares and proportions. This sharing of the rents, profits, etc., of said lands is to continue so long as the mother lives, then the property in question goes to the children absolutely. In my view this is the only reasonable construction to be given the said clause. In no other provision of the will is there any expression which might show a different intention to that set out in the above construction. See, also, the cases of *Feemster v. Good,* 12 S. C., 573, and *Hunter v. Hunter,* 58 S. C., 388; 36 S. E., 734; 79 Am. St. Rep., 845."

The defendant appealed upon the following exceptions:

"(1) That his Honor, the presiding Judge, erred in not sustaining the demurrer of the defendants upon the ground that the complaint does not state facts sufficient to constitute a cause of action for the reason that the plaintiff has no such interest in the income, rents, and profits of the land described in the complaint, as is alleged in the complaint.

"(2) That his Honor, the presiding Judge, erred in holding that the land, and the possession of the land, was impressed with a trust in favor of the children, to the effect that the mother and children are tenants in common in equal shares and proportions in the income, rents, and profits of the land, it being respectfully submitted that, under the will

of Frederick H. Dominick, the children are not tenants in common in equal shares and proportions in the income, rents, and profits of the land.

"(3) That his Honor, the presiding Judge, erred in holding that the land was impressed with a trust under the will and the children entitled to equal shares and proportions in the income, rents, and profits of the land, it being respectfully submitted that, if the land were impressed with a trust, it was not such a trust as the Court can take cognizance of and enforce, in that (a) there are no words showing the precise nature of the trust intended to be impressed; (b) there are no mandatory words in the will showing the creation of a trust, or the manner in which the alleged trust is to operate; (c) the beneficiaries are not named; (d) the interest which each beneficiary is to take is not shown by the will; (e) the proportion to which each is entitled is not shown by the will."

## OPINION

The ruling of his Honor the Circuit Judge, which gives rise to this appeal, is as follows:

"The property in question is to be used by the defendant Harriet F. Harman for her own benefit and that of her children so long as she lives. The possession of the land is vested in her for life, but impressed with a trust in favor of the children, to the effect that they shall share with the mother whatever benefit may be derived from the use of the lands, and as to such benefits in the way of rents, profits, etc., the mother and children are tenants in common in equal shares and proportions."

It was not the intention of the Circuit Judge to decide the rights of the parties in the remainder to the children, for the reason that the possession of the land was vested in the mother for life, and was to be used by her for her own benefit and that of her children, so long as she lives; and therefore that there could be no merger of the remainder

and the other estates created by the will, so as to execute the use devised to the mother and her children.

The question, therefore, is, whether there was a merger of the life estate and the equitable estates of the mother and children, whereby the use in the life estate was executed. It will be seen, by reference to the opinion of Mr. Justice Cothran, that he uses these words:

"It is by no means certain that the will creates a trust in Harriet P. Harman. There is no appointment of her as trustee; the word 'trust' is not used in the will; and, while this fact is not conclusive, and no formal words are necessary to create a trust, when the intention to do so is manifest, the requirements of such an implied or constructive trust must possess the elements of an express trust; a definite subject matter reasonably certain or ascertainable beneficiaries; a definite object or purpose of the trust. * * *"

"There is not a word in the will indicating an object or purpose of the alleged trust; nothing inconsistent with a legal estate for the life of Mrs. Harman, in her and her children. * * * But as this question has not been argued, and as both sides appear to concede that the will created a trust in Mrs. Harman, we will pass it by, and are not to be understood as deciding it.

"It will be assumed then that the will created a trust; that Mrs Harman is constituted trustee; that her tenure as trustee is for life; that the subject of the trust is an estate for the life of Mrs. Harman; that the beneficiaries of the trust are Mrs. Harman and her children; that at the death of Mrs. Harman the trust expires by limitation, and the remainders in favor of the children, in fee, take effect in possession; that the children of Mrs. Harman take contingent remainders in fee, depending upon their survival of the mother; the possession of the fee being postponed until the trust estate for the life of Mrs. Harman shall have terminated by her death.

"The next inquiry, assuming the existence of a trust, is as to its character: Is it a passive trust, executed by the statute of uses, or an active trust, not executed?"

The following quotations from the argument of the appellant's attorneys induce us to doubt whether Mr. Justice Cothran may not have been in error as to the extent of the concessions made by the attorneys:

"Such fund was placed by the testator in the hands of his daughter, Harriet F. Harman, to be by her kept together, and used for the support, maintenance, and education of her children, as well as for the support and maintenance of herself. But that support and maintenance for her children was to be meted out to them, not in equal proportions, but as the exigencies in the case of each might determine.

"Since there is nothing in the will excluding the exercise of discretion in the distribution of that fund by Harriet F. Harman, and since it is manifest that testator intended that such discretion should be lodged somewhere, and since the gift is expressly and directly to her and not to her children, it would seem that she, and not they, was clothed with such discretion. Has there been any abuse of that discretion? None is alleged in the complaint.

"There is no question in this case as to the disposition of distribution of the property, given to Harriet F. Harman, after her death. Her children *in esse* at the death of testator took vested remainders, to take effect in posssssion upon the death of the life tenant, Harriet F. Harman, subject to open to admit other children, should such thereafter be born to the said Harriet F. Harman, and subject to be defeated upon the death of such children during the lifetime of the said life tenant, leaving children, in which event such children would take directly under the will, as substitutional remaindermen, the share their parent would have taken had he or she survived the life tenant, Harriet F. Harman— citing *Rutledge v. Fishburne,* 66 S. C., 155; 44 S. E., 564; 97 Am. St. Rep., 757. *Pearson. v. Easterling,* 107 S. C.,

265; 92 S. E., 619; Ann. Cas., 1918D, 980.    *Tindal v. Richbourg,* 91 S. C., 404; 74 S. E., 932.    *Walker v. Alverson,* 87 S. C., 55; 68 S. E., 966; 30 L. R. A. (N. S.), 115. *Brantley v. Bittle,* 72 S. C., 179; 51 S. E., 561.    *Fishburne v. Sigwald,* 79 S. C., 551; 60 S. E., 1105.    *Buist v. Walton,* 104 S. C,. 95; 88 S. E., 357."

We do not understand from these quotations that it was the intention of the appellant's attorneys to concede that the life tenant was clothed with any other than a discretionary power or trust to use the rents and profits in such manner as to her might seem for the best interests of the beneficiaries.    Such power or trust would impose a duty on the life tenant as trustee, which would prevent the execution of the trust.    The proposition that the use cannot be executed if there is a duty to be performed by the trustee is so well settled that we do not deem in necessary to cite authorities to sustain it.    Was there such a duty in this case?

The Statute of Henry VIII, now Section 5450, Code of Laws, 1922, is substantially as follows:

"Where any person  *  *  *  shall be seized of  *  *  * any lands  *  *  *  to the use  *  *  *  of any )other person  *  *  *  by reason of any  *  *  *  will,  *  *  * the person  *  *  *  that  *  *  *  shall have  *  *  * any such use  *  *  *  for term of life,  *  *  *  shall be deemed  *  *  *  in lawful seisin, estate, and possession of *  *  *  the same lands,  *  *  *  to all intents,  *  *  * and purposes  *  *  *  of  *  *  *  such like estates as they had  *  *  *  in use, trust, or confidence of or in the same."

It will be observed that it contains the words:    "Shall be seized of  *  *  *  any lands  *  *  *  to the use  *  *  * of any other person."

In the case of *Foster v. Glover,* 46 S. C., 522; 24 S. E., 370, William Foster conveyed certain lands to William H. Foster, his heirs, and assigns forever:

"To have and to hold the premises above mentioned, unto
the said William H. Foster, Trustee, his heirs and assigns
forever, nevertheless, in trust for the sole and separate use
of Mrs. Sarah A. Foster and her children."

William H. Foster, trustee, was a son of Sarah A. Fos-
ter. The question in the case was whether the use in Sarah
A. Foster and her children was executed.

Mr. Justice Cothran relies upon that case, but we rely
upon it also, for it states the rule as to the execution of a
trust when the trustee is also a beneficiary. We quote as
follows from that case:

" * *    * W. H. Foster, the plaintiff, is not only trustee,
who has paid a valuable consideration, but he is also one of
the beneficiaries being a child of Sarah A. Foster. Now,
while it may be true that the statute of uses would execute
the trust, so far as it related to the estates of Sarah A. Fos-
ter, M. M. Glover, Mary E. Foster, and George W. Foster,
since, as to his own interest as beneficiary, he is not 'a
person seized to the use of some other person,' one of the
three circumstances necessary to the execution of a use by
the statute (see *Williams v. Holmes,* 4 Rich. Eq., 485) ;
still, under the doctrine of merger, the plaintiff took an
absolute title to a part of said premises. *'If the trustee be
one of the beneficiaries of the trust, he is absolute owner of
a share of the estate equal to his interest.'* 2 Wash. Real
Prop., 516. Thought doubted by Chancellor Kent, 6 John
Ch. R. 426, it is settled law that a merger may be *protanto*
(*Trimmier v. Vise,* 17 S. C., 499), and as to certain per-
sons among the *cestuis que* trust. 25 N. J. Law, 137; 103
Ind., 533. Here, then, to the extent of the interest or
estate of the plaintiff, W. H. Foster, as a beneficiary, was a
union of the legal and equitable estates, and the equitable
merged into the legal." (Italics added.)

The facts in that case were, however, quite different from
those in the present case. In the case of *Foster v. Glover,
supra,* the trustee did not have any beneficial interest in the

lands, except as a child of Sarah A. Glover, while Mrs. Harman not only has a beneficial estate as life tenant, but likewise under the provision of the will that the lands should be held for the benefit of herself and children.

The duty rested upon the mother to retain the legal title to her life estate for the protection of her rights, as a merger of her life estate and the equitable estate of herself and children would result in the execution of the trust, and thereby enlarge her life estate so as to include the children as life tenants. The effect of such merger would also have the effect of greatly decreasing the value of her life estate, without making her any compensation whatever. This would deprive her of her rights without due process of law, which, of course, would be in violation of the State Constitution as well as the Federal. Such a merger would unquestionably defeat the intention of the testator.

Furthermore, the thirteenth clause of the will should be construed as if it now read:

"I will to my daughter Harriet Harman my Tinsley place and my Carwile place, to have and to hold to the use of herself and her children during her life, and then to her children absolutely share and share alike, the child or children of a predeceased child to take the share to which the parent would have been entitled."

It will be observed that the testator used the words, "share and share alike" in providing for the proportions in which the children should take in remainder, but made no such provision for the division of the rents and profits during the life of the mother, thus showing that he intended that she should exercise a discretion in disposing of them. This was no doubt due to the fact that such a provision, if applied to the income, would have prevented the exercise of the discretion which had been placed in the mother.

It was on account of the duty imposed upon the mother to exercise her discretion in disposing of the income for the benefit of herself and children that she was to receive a

larger share than the children in the rents and profits. In order, however, to equalize the devises to the mother and children, he gave the children the remainders in all the lands.

The method for determining the value of a life estate is thus stated in *Cain v. Cain*, 53 S. C., 350; 31 S. E., 278; 69 Am. St. Rep., 863:

"The value of the estate in remainder is the difference between the value of the estate in fee and the value of the life estate. In the absence of the adoption in this State of any table of life annuities, we see no good reason why the rule, which experience has approved, of assessing the one-sixth of the fee-simple value of the estate in money, in lieu of the widow's dower, or life estate in one-third, simple value of the whole, then a life estate in the whole may not be adopted in estimating as an advancement the value of an estate in remainder after a life estate. If a life estate in one-third is valued at one-sixth of the fee- or any definite part, may be valued at one-half its fee-simple value. Hence an estate in remainder after a life estate may be valued at one-half of the fee-simple value of the whole."

It is the judgment of this Court that the order of the Circuit Court overruling the demurrer to the complaint be reversed, without prejudice to the right of the plaintiff to recover such damages as she may have sustained, by reason of a failure on the part of the appellant to exercise the discretionary trust confided to her in accordance with the provisions of the will.

MESSRS. JUSTICES WATTS and FRASER concur.

MR. JUSTICE MARION concurs in the result.

MR. JUSTICE COTHRAN: I dissent for the reasons given in opinion herewith filed and for the additional reason that the leading opinion assumes that Mrs. Harman took a life estate under the will. As I construe it, the will gives an estate in joint tenancy to her and the children during her life, which is quite different from giving her a life estate.

It is of the same character as if it had been given to her and the children during the life of John Doe.

MR. JUSTICE COTHRAN (dissenting): Action by the plaintiff claiming to be a *cestui que* trust under the will of her grandfather, Frederick H. Dominick, against her mother, Harriet F. Harman, trustee, under said will, for an accounting of the rents and profits of certain lands described in the complaint. The other defendants are her brothers and sisters having the same interests as the plaintiff.

The appeal is from an order of the Circuit Court overruling a demurrer to the complaint, interposed by the defendant Harriet F. Harman, who alone is appealing.

The controversy involves a construction of the will of Frederick H. Dominick, who died in the year 1891. At that time the plaintiff and all of the defendants were living; they are all still living with the exception of J. W. Harman, a brother of the plaintiff, who died after this action was commenced; his death does not affect the questions now involved.

The will contains this clause:

"I will to my daughter Harriet F. Harman, my Tinsley place and my Carwile place, to have and to hold to the use and benefits of herself and her children during her life, and then to her children absolutely, as in the case of each of my other children."

The devises "in the case of each of my other children," were in the following terms:

"To have and to hold the same during his natural life for the use and benefits of himself and children, and at his death to go to his children absolutely, share and share alike, the children of a predeceased child to take the share to which their parent would have been entitled" (necessitating of course, in the case of a daughter, a change of the personal pronoun).

Under another clause of the will, the fourteenth, certain other real estate was directed to be divided among the children of the testator, "to. have and to hold the same subject to the same uses and limitations prescribed in the devises above written."

In accordance with the terms of the will, the defendant Harriet F. Harman received and went into possession of the following lands:

Under the thirteenth clause, the Tinsley and Carwile
place, containing in acres ................. 1,013
Under the fourteenth clause, the Henson place, con-
taining in acres ........................ 226
And a portion of the Hill place, containing in acres.. 322
_____
Total acres ............................ 1,561

The allegations of the complaint are that Mrs. Harman ever since has had the exclusive control of said lands; has received the annual rents and income from the same; and has disposed of them as she saw fit; that the plaintiff has received practically nothing from the use of the lands; that the plaintiff has demanded of her mother that she account to her for her distributive share in the proceeds of the land, but has met with a refusal; that the annual income from the lands is considerable, so considerable in fact, that Mrs. Harman has invested a part of the same in other lands, and taken title thereto in her own name.

The plaintiff in her complaint upon these alleged facts demands an accounting by Mrs. Harman of her distributive share of said proceeds, and for judgment against her for the same.

The defendants answered the complaint, but, as the appeal involves only the demurrer of Mrs. Harman to the complaint, the demurrer only need be considered, although the answer is set out in the record for appeal.

The general ground of demurrer with specifications is "that the plaintiff has no such interest, as is alleged in the

complaint, in the income, rents, and profits received from the lands described in the complaint, nor is the plaintiff entitled to an accounting thereof, or to any of the relief demanded in the complaint."

The position assumed by the appellant is thus expressed in the argument of her counsel: "Such fund (that is, the income from the lands) was placed by the testator in the hands of his daughter, Harriet F. Harman, to be by her kept together and used for the support, maintenance, and education of her children, as well as for the support and maintenance of herself. But that support and maintenance for her children was to be meted out to them, not in equal proportions, but as the exigencies in the case of each might determine"; that the several children, are not entitled to a distributive share in said income, as alleged in the complaint; and that, as there is no allegations in this complaint, the discretion of Mrs. Harman, as above indicated, has been abused, the complaint does not state facts sufficient to constitute a cause of action.

The demurrer was heard by his Honor Judge Rice, at the December term, 1922, and on February 23, 1923, he filed an order overruling the demurrer. The meat of his order is this:

"The possession of the land is vested in her (Mrs. Harman) for life, but impressed with a trust in favor of the children, to the effect that they shall share with the mother whatever benefits may be derived from the use of the lands, and as to such benefits, in the way of rents, profits, etc., the mother and children are tenants in common, in equal shares and proportions."

From this order the defendant Mrs. Harman has appealed upon exceptions which fairly present the questions to which the conclusions hereinafter announced are responsive.

It is by no means certain that the will creates a trust in Harriet F. Harman. There is no appointment of her as trustee; the word "trust" is not used in the will; and while

this fact is not conclusive, and no formal words are neces-
sary to create a trus,t when the intention to do so is mani-
fest, the requirements of such an implied or constructive
trust must possess the elements of an express trust:   (1)
A definite subject matter; (2) reasonably certain or ascer-
tainable beneficiaries; (3) a definite object or purpose of
the trust.

As is said in 1 Perry, Trusts (3d Ed.) § 82:

"There is no particular formality required or necessary
in the creation of a trust.   Any agreement or contract in
writing, made by a person having the power of disposal over
property, whereby such person agrees or directs that a
particular parcel of property, or a certain fund, shall be
held or dealt with in a particular manner for the benefit of
another, in a Court of equity, raises a trust in favor of such
other person."

There is not a word in the will indicating an object or
purpose of the alleged trust; nothing inconsistent with a
legal estate for the life of Mrs. Harman, in her and her
children, very different from the terms of the will in *Hunter
v. Hunter,* 58 S. C., 382; 36 S. E., 734; 79 Am. St. Rep.,
845:

"I will  *  *  *  to my wife, Nannie W. Hunter, for
and during her life time to support herself and my chil-
dren and to educate my children."

Construing that clause, the Court says:

"The words used expressly declare the purposes for which
the property was given to her for life, and to those purposes
it must be devoted.   If so, then the language used is not
only quite sufficient to create a trust, but must be so con-
strued, even though the word 'trust' is not used, in order
to insure the accomplishment of the purposes for which the
property is declared to have been given."

This declaration is followed by quotations from authori-
ties which need not be repeated here.   See 58 S. C., 389;
36 S. E., 736; 79 Am. St. Rep., 845, and the conclusion is:

"These authorities, based as they are upon sound reason and common sense, satisfy us that this will should be construed as creating a trust in the wife for the accomplishments of the purposes declared by the testator."

But, as this question has not been argued, and as both sides appear to concede that the will created a trust in Mrs. Harman, we will pass it by, and are not to be understood as deciding it.

It will be, assumed, then, that the will created a trust; that Mrs. Harman is constituted trustee; that her tenure as trustee is for life; that the subject of the trust is an estate for the life of Mrs. Harman; that the, beneficiaries of the trust are Mrs. Harman and her children; that at the death of Mrs. Harman the trust expires by limitation, and the remainder in favor of the children, in fee, take effect in possession; that the children of Mrs. Harman take contingent remainders in fee, depending upon their survival of the mother, the possession of the fee being postponed until the trust estate for the life of Mrs. Harman shall have terminated by her death.

The next inquiry, assuming the existence of a trust, is as to its character: Is it a passive trust, executed by the statute of uses, or an active trust, not executed?

The Statute of Henry VIII, now Section 5450, Vol. 3, Code of Laws, A. D. 1922, provides:

"Where any person * * * shall be seized of * * * any lands * * * to the use * * * of any other person * * * by reason of any * * * will * * * the person * * * that * * * shall have * * * any such use * * * for term of life * * * shall be deemed * * * in lawful seisin, estate, and possession of * * * the same lands * * * to all intents * * * and purposes * * * of * * * such like estates as they had * * * in use, trust, or confidence of or in the same."

The, statute is mandatory, and operates to place the legal seisin and title at once in the *cestui que* trust, the trustee

acting simply as a conduit for the immediate transmission of the title and right to possession.

By an unbroken line of decisions in this State and elsewhere, a limitation has been engrafted upon the broad provisions of the statute, to the effect that the statute will not be applied so as to transmit the legal title and possession immediately to the beneficiary, where the instrument creating the trust imposes such duties upon the trustee, in connection with the trust, as that he shall hold the legal title in order to perform them.

"The statute will not execute the use as long as there is anything remaining for the trustee to do, which renders it necessary that he should retain the legal title in order fully to perform the duties imposed upon him by the trust." *Ayer v. Ritter,* 29 S. C., 135; 7 S. E., 53. *Bowen v. Humphreys,* 24 S. C., 452.

The opinion of Chief Justice McIver in *Ayer v. Ritter,* 29 S. C., 135; 7 S. E., 53, leaves nothing to be said in elaboration.

"A mere naked trust, when the trustee is only required to hold the legal title, is executed by the statute of uses; but whenever the trustee is charged with any duty to the estate which he cannot do unless the legal title remains in him, the statute does not apply." *Carrigan v. Drake,* 36 S. C., 354; 15 S. E., 339. *Mins v. Machlin,* 53 S. C., 6; 30 S. E., 585.

"That where the trust was executory, that is where the trustee was required to act and not merely to hold the estate, that there also the use could not be executed." *Wilson v. Cheshire,* 1 McCord Eq., 233.

It is manifest that, unless the fact of the imposition of such duties can be gathered from the terms of the instrument creating the trust, by expression or unnecessary implication, the legal effect, so clearly declared in the statute, cannot be evaded. It matters not how clearly the Court may think that it perceived the intentions of the donor, from

the conditions of the property, the situation and relations of the beneficiaries, and from the other matters outside of the instrument, that conception must be sacrificed to the mandate of the statute.

While it is a fundamental rule that in all constructions of written instruments the intention of the maker must control, the only safe rule is that such intention must be ascertained from the language of the paper. Whatever may have been the intention of the maker, it cannot be given effect unless legally expressed, or unless it is consistent with the legal effect of the language employed. Otherwise the Court is set adrift in a rudderless boat upon an uncharted sea.

A familiar illustration is the rule in Shelley's Case, which in its application concededly defeats the plainly expressed intention of the donor.

"But, however the Court may be disposed to deflect the general principle so as to conform to the intention, it must gather that intention by a fair construction of the instrument." *McNish v. Guerard,* 4 Strob. Eq., 66.

In *Faber v. Police,* 10 S. C., 385, the Court said:

"We are at a loss to conceive by what right a Court could undertake to add to the words of a will, by which additionl trusts to those which the testator has seen fit to declare should be raised."

See, also, in this connection quotation hereinafter set forth from *McNish v. Guerard,* 4 Strob. Eq., 66.

Repeating the provisions in the will for convenient inspection at this point:

"To have and to hold the same to the use and benefit of herself and her children and then to her children absolutely, as in the case of my other children;" that is, "share and share alike, the children of a predeceased child to take the share to which their parent would have been entitled."

Looking, as we must, to this clause for such duties imposed upon the trustee, in connection with the trust, as will

make the trust an active one, and defeat the operation of the statute, we find it absolutely barren, with the exception of the duty to "have and to hold," not a duty at all, but an incident of the devised life estate, not only consistent with but inseparable from the enjoyment of that estate. The trustee is not directed to control or manage the estate or to collect the income or to distribute it, or to maintain and educate the children or to divide the property when the time for that shall arrive; she is nothing but the naked depository of the title; a condition demanding the application of the statute.

The cases from the reports of this State compel this construction, however reluctant the Court may be to thwart the very probable intention of the testator.

In *McNish v. Guerard,* 4 Strob. Eq., 66, the grantor conveyed land to the grantee as trustee of his eight children, naming them, to be divided equally among them, and until the division shall take place, "to be occupied and used entirely and specially for the maintenance and support of the aforesaid children." The Court held that the trust was executed saying:

"I do not perceive, in these words, evidence that it must have been the intention of the grantor that the land was to be occupied or the rents received and disbursed by the trustee for the maintenance of the children. I do not know that I am at liberty to consider the situation of the family in giving construction to the words of the deed. A very strong persuasion certainly arises from the fact that these children were infants, and that the deed was made to their father, with a direction for their support—that it was meant this support should be administered through him. But on the other hand, if the statute carried the legal estate to the children, all this could be, and must necessarily be, attended to by guardians."

That is a much stronger case for the construction of an active trust than the case at bar, for here there is no direc-

tion that the trustee shall occupy the land, and no direction that the income shall be received by the trustee and devoted to the support and maintenance of the children; nothing but the bare direction that she shall "have and hold," during the term of her natural life "for the use and benefit of herself and her children"; a provision common to all executed trusts.

In *Posey v. Cook,* 1 Hill, 413, the test is thus expressed:

"Where particular things are to be done by the trustees, it is necessary that the estate should remain in them so long, at least as those particular purposes required it."

By "particular things," we understand is meant specific duties imposed upon the trustee by the instrument creating the trust, not duties nor privileges which the Court may conjecture that the maker intended to impose upon the trustee, unless such intention may be gathered from the words of the instrument. However strongly the circumstances may be persuasive upon the Court that the testator intended Mrs. Harman to have the exclusive control of the lands and to disburse the income for the education, maintenance, and support of the children as her discretion might dictate, that purpose cannot be discovered in the terms of the will, and to give it effect words not there must be read into the will.

In *Bristow v. McCall,* 16 S. C., 545, the trustee was charged with the duty of dividing the land between two beneficiaries, to allow each to go into possession of his part for life, and at death to divide the share among his children. The imposition of these duties prevented the execution of the trust.

In *Faber v. Police,* 10 S. C., 376, there was a devise to trustees for the use of another during his life, and after his death in trust for his lawful issue living at that time, with contingent remainders over upon his death without issue. The trust was held to have been executed by the statute, for the reason that by the will "no duty whatsoever is imposed upon the trustees."

In *Howard v. Henderson,* 18 S. C., 184, land was conveyed to a trustee in trust for the use and benefit of the grantor for life, with remainder to the wife of his son for life, with contingent remainders over. It was held that the trust was executed, the Court saying:

"No direction whatever is given to the trustee as to the rents and profits of the land. He is not required either expressly or impliedly to collect and pay them over. He is not charged with any duty whatever in reference thereto."

In the case of *Smith v. Smith,* 24 S. C., 304, the duties imposed by the will upon the trustees were: (1) To hold and possess the land; (2) to permit the beneficiaries to have the income during his life; (3) if the beneficiaries should die leaving no child of age, to hold the land until such child has attained majority; (4) then to convey and deliver the land to the children. The Court held that there were duties for the trustees to perform and that the trust was not executed. Compare these provisions which the barrenness in that respect of the will in the case at bar.

In *Snelling v. Lamar,* 32 S. C., 72; 10 S. E., 825; 17 Am. St. Rep., 835, land was conveyed to trustees in trust for the use of a married woman during the joint lives of her and her husband; that if she survived her husband, then in trust for her and her children during her life or widowhood; and upon her death or marriage to be divided equally among her children, with a provision for the children of a predeceased child, *per stirpes.* The husband died, and the question arose whether or not at his death the trust became executed. In deciding that the trust became executed, the Court, by Mr. Justice McIver, said:

"It is quite manifest that no duties are imposed upon the trustees, nor any discretion vested in them, which rendered it necessary that the legal estate should remain in them, and hence, under the rule above stated, the legal estate passed to the beneficiaries. They [that is, the trustees] were not required to receive the rents and profits of the property, and

pay them over to the beneficiaries, nor were they required to divide the property when the time for division arrived, and they were not directed to convey the estate, or the share therein, to the persons intended to be benefited thereby. So far as we can discover, the trustees were not invested with any discretion, nor clothed with any powers whatever—they were simply to hold the property until the time for division arrived."

The only differentiating circumstances that we perceive between that and the case at bar is that in this case the trustee happens to be one of the beneficiaries; a circumstance negligible in determining whether or not duties were imposed upon the trustee sufficient to avoid the execution of the trust.

In *Reeves v. Brayton,* 36 S. C., 384; 15 S. E., 658, the devise was to a trustee in trust for the use and benefit of the trustee's children, to be divided amongst them share and share alike. The Court held that the trust was executed in the children, saying:

"The statute will not execute the use as long as there is anything remaining for the trustee to do, which renders it necessary that he should retain the legal title in order fully to perform the duties imposed upon him by the trust. * * *. The trustee was not directed to receive the rents and profits and apply the same, either in specified portions or at his discretion, to the use and benefit of his children, nor was he directed to make the division contemplated amongst his children. * * * We do not see, therefore, that the trustee was invested with any power or charged with any duty which rendered it necessary that he should retain the legal estate."

In the case of *Foster v. Glover,* 46 S. C., 522; 24 S. E., 370, land was conveyed by deed to a trustee in trust for the sole and separate use of Mrs. Sarah A. Foster and her children. The trustee was the son of the grantor and one of the children referred to. Upon the question of the execu-

tion of the trust by the statute, the Court held that as no duty was imposed upon the trustee by the deed, the trust was a dry, passive trust, and under the statute was immediately executed, and the estate vested in the parties entitled to the use, the mother and children, in equal proportions in fee simple. Upon the suggested difficulty of the trustee being one of the beneficiaries, the Court held that his equitable interest was merged in the legal title, and vested in him upon the execution of the trust. "So that Sarah A. Foster and each of her children, at the execution of said deed in 1871, took one-fifth of the land in fee."

In *Holmes v. Pickett,* 51 S. C., 271; 29 S. E., 82, the devise was to a trustee, in trust for another, who was to receive the income thereof during his life, with remainder over at his death. The Court held that the trust was executed, saying:

"A careful consideration of the terms of that clause fails to disclose any such duty imposed upon the trustee. Indeed, we are unable to perceive that he was required to do anything whatever. He was not required to receive and pay over to the life tenant the rents and income of the property. On the contrary, by the express terms of the clause, the life tenant was himself empowered to receive such rents and income during the term of his natural life. Nor was the trustee required to convey the property to the remainderman upon the termination of the life estate. Indeed, as we have said, we do not see that the trustee was required to do anything whatever."

In *McNair v. Craig,* 36 S. C., 100; 15 S. E., 135, the grant was to a trustee, in trust "to hold for the sole and separate use, benefit, and behoof of Mrs. Laura S. Craig and her children." The Court held that the trust was executed, saying:

"We discover no duties to be performed by the trustee, rendering it necessary for the legal estate to remain in him beyond that of preserving the separate estate of Mrs. Craig.

Indeed, the trustee was charged with no duties whatever, but to execute titles to the land upon the written request of Mrs. Craig, and we think that immediately upon the execution of the deed the trust as to the children was executed, and those living became tenants in common with vested legal interests."

There are two differentiating circumstances between the case just cited and the case at bar: (1) In the latter, a life estate is the subject of the trust, while in the other it is a fee simple. With regard to this circumstance it is obvious that the difference in the quantity of the estate is negligible in determining the vital question whether or not the will imposes any duty upon the trustee; (2) the trustee in the case at bar is one of the beneficiaries. As to this, as we have seen from the authorities cited, this is a distinction without a difference. See quotation above from *Foster v. Glover,* 46 S. C., 522; 24 S. E., 370.

The case of *Jenney v. Laurens,* 1 Speers, 356, is out of line with the other cases of this State upon the subject, and should not be considered as authority. The will in that case devised certain real estate to a trustee, "to have and to hold the same for the use and benefits of, and to apply the rents, issues and profits to," certain beneficiaries. The opinion states:

"It is not sufficient to prevent the estate from being executed, that there may be something for the trustee to do. I would rather think the rule may be laid down that the trust will be executed, unless the object of creating it would be defeated, as in the cases of trusts for married women, and to preserve contingent remainders, or where the trustee has some discretion to be exercised in relation to the estate or the manner of applying the proceeds."

The principle, as we understand, settled by the decisions of this State and elsewhere, is that, if there be any duty in connection with the trust estate imposed by the instrument creating a trust, whether such duty be discretionary or abso-

lute, the trust is not executed. The duty to apply or pay the rent to the beneficiary implies the duty to collect it, which in turn implies the duty of renting the land and that the duty of possession and control. *Rensey v. Marsh,* 2 McCord, 252; 13 Am. Dec., 717, cited in *Posey v. Cook,* 1 Hill, 413; 1 Power on Trust, § 305. See, also, the criticism of *Jenney v. Laurens,* in *Ayer v. Ritter,* 29 S. C., 135; 7 S. E., 53.

The trust therefore not being an executory one, but executed by the statute, the result is that Mrs. Harman and the children became immediately upon the taking effect of the will, joint tenants of the legal estate for the life of Mrs. Harman, and the children joint tenants in fee of the remainder upon the expiration of the life estate, contingent upon their surviving Mrs. Harman, else the *per stirpes* provision to take effect. The term "joint tenants," instead of "tenants in common," is used advisedly, to express an equal interest in each.

The following authorities show that Mrs. Harman and the children take the life estate as joint tenants.

"*Wallace v. Craig,* 27 S. C., 514, and *McNair v. Craig,* 36 S. C., 100, settled that, under a deed to a trustee, 'his heirs and assigns,' in trust for the sole and separate use * * * of B. a married woman, and her children, the married woman took an equal share with each of her children living at the execution of the deed." *Foster v. Glover,* 46 S. C., 522; 24 S. E., 370.

In the case of *Wallace v. Craig,* 27 S. C., 514; 4 S. E., 74, which involves the construction of the same will which came up in the case of *McNiar v. Craig,* 36 S. C., 100; 15 S. E., 135, the Court held, although expressing the conviction that the grantor intended the gift for the mother, primarily for her benefit, and incidentally for that of her children, that the mother and the children took a joint estate.

In *Feemster v. Good,* 12 S. C., 573, the devise was to the testator's wife "to dispose of as she may think best for her and our children." The Court held that that constituted a gift to the wife and children, saying:

"It is the same thing, as far as this question is concerned, as if the testator had made the gift directly to his wife and children by name, in which case it is clear that they would all take in equal shares."

It cannot be doubted that, if the devise in the case at bar had been either to Mrs. Harman or another as trustee to hold for the use and benefit of Mrs. Harman during her life, the principle announced in *Bank v. Garlington,* 54 S. C., 413; 32 S. E., 513, would have applied:

"It will be observed that Spring Grove is not devised to John G. Williams directly for his life, but to the executors, 'for his use and benefit during his life'—and if this were all, there would be no doubt that the statute of uses would execute the use, and the legal title would pass to John G. Williams for his life."

As is said in *Foster v. Glover,* 46 S. C., 522; 24 S. E., 370:

"If a person should grant land to A., in fee trust for A., could any one doubt that the grantor intended that A. should have the fee? Would it not be equally certain, if he should convey the land in fee to A., in trust for A., B., C., D., and E., that the grantor intended A. to have an estate in fee in one-fifth of the land?"

The fact that Mrs. Harman as trustee held a life estate instead of a fee does not alter the above logic.

"When the use is transformed from an equitable to a legal estate, the same qualities, conditions, and limitations, which were applicable to it as a use, follow it in its new condition as a legal estate." *Williman v. Holmes,* 4 Rich. Eq., 475.

It follows, therefore, that Judge Rice was right in holding that, so far as the income of the property is concerned, Mrs.

Harman and the children are entitled to division in equal shares, and that he committed no error in overruling the demurrer of the defendant.

The trustee is accountable to the plaintiff for her share of the income received, since she went into possession of the property, and she holds whatever property she may have invested said income in subject to the trust.

The judgment of this Court should be that the judgment of the Circuit Court be affirmed, and that the case be remanded to that Court for further proceeding not inconsistent with the conclusions herein announced.